## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**FURLANDARE SINGLETON,** *et al.*                                        **PLAINTIFFS**


**v.**                          **Case No.:  4:15-CV-205-KGB**

**ARKANSAS HOUSING AUTHORITIES PROPERTY
& CASUALTY SELF-INSURED FUND, INC.,** *et al.*          **DEFENDANTS**


### HOUSING AUTHORITY DEFENDANTS'
### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Separate Defendants Arkansas Housing Authorities Property & Casualty Self-Insured Fund, Inc., Evanston Insurance Company and Phil Nix[1] (collectively, "Housing Authority Defendants"), are entitled to judgment as a matter of law because Plaintiffs have no evidence from which the jury could find that the Housing Authority Defendants committed any negligent act or omission that proximately caused the death of any decedent.

Plaintiffs contend that the Housing Authority Defendants "breached their duty when they failed to ensure properly working and accessible smoke alarms/detectors were properly installed in the Decedents' apartment unit." (Am. Compl. at ¶ 58). An expert examination of the smoke detector or alarm has confirmed that it was working and sounded on the night of the fire that claimed the lives of Marilyn Beavers and her four children. Because no

---

[1]  Separate Defendants Phil Nix and Jacksonville Housing Authority have filed separate motions for summary judgment contending that they are immune from tort liability under Ark. Code Ann. § 21-9-301.  *See* ECF Nos. 17 and 20. Therefore, as to these Defendants, this motion is filed subject to the earlier filed motions and without waiving their claims of immunity.

evidence exists to permit a jury finding that the Housing Authority Defendants breached any duty owed to decedents, the Housing Authority Defendants are entitled to judgment as a matter of law.

## I.     <u>Facts Without Material Controversy</u>

On January 4, 2007, Marilyn Beavers entered into a residential lease agreement with the Jacksonville Housing Authority to rent Apartment 3-A, located on South Simmons Street, in Jacksonville, Arkansas.  The lease was in effect on March 21-22, 2012, when a fire broke out in the apartment that caused the deaths of Ms. Beavers and her four children by smoke inhalation. (Exh. 1, Affidavit of Phil Nix, at ¶¶ 1-2).

At the time of the fire, a smoke detector was installed in Ms. Beavers' apartment.  It was the regular practice of Jacksonville Housing Authority to check the smoke detector or alarm when performing maintenance on the apartment units.   On January 26, 2012 and December 20, 2011, the smoke detector or alarm installed in Ms. Beavers apartment was checked and determined to be working order.  (Exh 1., Nix Afff., at ¶¶ 3, 5).

Sometime after 2:00 a.m. on March 22, 2012, a fire ignited in Ms. Beavers' apartment.  (Am. Complaint at ¶ 35).  Ms. Beavers was awake and attempted to extinguish the fire, sustaining burns on her hands, arms, forehead, and neck in the process.  (*Id.* at ¶¶ 37, 39).  It is undisputed that Ms. Beavers recognized and attempted to extinguish the fire.

Plaintiffs contend that the "smoke detector/alarm located in the hallway of the apartment did not sound."  (*Id.* at ¶ 38).  On December 7, 2015, the

smoke alarm from the Beavers' apartment was inspected in the presence of counsel for all parties and their expert witnesses.  Daniel T. Gottuk, who has a Ph. D in mechanical engineering and is an expert in fire detection and fire dynamics, was present for the Housing Authority Defendants.  (Exh. 2, Affidavit of D. Gottuk at ¶¶ 3, 6).  In his expert opinion, based on accepted methodology, the smoke alarm in Ms. Beavers' apartment sounded at the time of the fire after which it was displaced from the ceiling and fell to the floor.  (*Id.* at ¶¶ 7-14).

There is no evidence to refute the expert opinion testimony that the smoke detector or alarm in Ms. Beavers' unit sounded on the night of the fire. Therefore, Plaintiffs have no evidence to support their claim of negligence against the Housing Authority Defendants.

## II.   <u>**Discussion and Authority**</u>

### A.   **Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In order to defeat a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249.

The non-movant, however, must go beyond the pleadings and come forward with specific facts showing a genuine issue for trial. *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis added). The mere existence of some alleged factual dispute will not defeat a properly supported motion for summary judgment; rather, the disputed fact must be "outcome determinative" under applicable law. *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). A case founded on "speculation or suspicion" is not sufficient to survive a summary judgment motion. *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

Summary judgment is an important part of the judicial process that is designed "to secure the just, speedy and inexpensive determination of every action." *See Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. 56).

For the reasons explained below, the Housing Authority Defendants are entitled to judgment as a matter of law on all claims asserted by all Plaintiffs in both consolidated actions.

**B.    Under the undisputed facts, whether the smoke detector worked is irrelevant.**

As a practical matter, the issue of whether the smoke detector or alarm sounded is irrelevant. It is undisputed that Ms. Beavers and her children were awake when the fire started "[m]oments after the family's 2:00 a.m. phone conversation" with Plaintiff Furlandare Singleton, in which all four children

allegedly participated with Ms. Beavers.  (See Am. Compl. at ¶¶ 34, 35).   The purpose of a smoke detector or alarm is to ensure the occupants are aware of a fire and have the opportunity to escape.  Ms. Beavers and the children were awake when the fire started.  Ms. Beavers attempted unsuccessfully to put the fire out.[2]  Thus, the smoke alarm's presence and whether it worked or did not is a red herring.

### C.   Any duty owed by the Housing Authority Defendants to Marilyn Beavers and her children was limited and complied with by the installation of a smoke detector.

As a general rule, "a landlord, under Arkansas law, is not the insurer of the safety of tenants or others upon the premises." *Bartley v. Sweetser*, 319 Ark. 117, 118 (1994).  A landlord has "no legal obligation . . . for a tenant's injury on the premises unless a duty is imposed by statute or agreement." *Id.* In 2005, the Arkansas General Assembly codified this common law rule by enacting Ark. Code Ann. § 18-16-110, which provides:

> No landlord or agent or employee of a landlord shall be liable to a tenant or a tenant's licensee or invitee for death, personal injury, or property damage proximately caused by any defect or disrepair on the premises absent the landlord's:
>
> (1)   Agreement supported by consideration or assumption by conduct of a duty to undertake an obligation to maintain or repair the leased premises; and
>
> (2)   Failure to perform the agreement or assumed duty in a reasonable manner.

---

[2]   The coroner's report states that Marilyn Beavers' ethanol level was .14 g. percentage.  This is consistent with intoxication and arguably played a role in this tragic event.

These statutory requirements are incorporated into AMI 1105, which provides that Plaintiffs must prove the following in order to prevail on their claim against the Housing Authority Defendants:   (1) that they sustained damages;   (2)  that the Housing Authority Defendants agreed to maintain or repair the leased property and received consideration for that agreement, or that by their conduct they agreed to maintain or repair the leased property;  (3) that the Housing Authority Defendants failed to perform the agreement or assumed duty in a reasonable manner;   and (4) that the Housing Authority Defendants failure to perform the agreement or assumed duty in a reasonable manner was the proximate cause of Plaintiffs' damages.  AMI 1105 (2015).

The existence and scope of any duty owed by the Housing Authority Defendants to Plaintiffs' decedents is an issue for this Court to decide.  *See*, *e.g. Young v. Gastro-Intestinal Ctr., Inc.*, 361 Ark. 209, 218 (2005) ("Defining the existence of a legal duty is emphatically a matter for the courts or the legislature to decide.").   Arkansas law is clear that the Housing Authority Defendants' duty, if any, must arise from a written agreement between the parties or an intentionally assumed duty to repair or maintain.

A written lease agreement existed between Marilyn Beavers and the Jacksonville Housing Authority at the time of the fire.    A copy of the lease agreement is attached to the Affidavit of Phil Nix as Exhibit 1-A.  In the lease agreement, the Housing Authority Defendants agreed to comply with the housing code and HUD regulations materially affecting health and safety. (Lease Agreement, Exhibit 1-A, at VI, A, 2).   HUD regulations required that at

least one working smoke detector be installed in the unit leased to Marilyn Beavers. <u>See</u> 24 CFR § 5.703(d)(4). The Housing Authority Defendants complied with this requirement. (Exh. 1, Nix Aff. at ¶ 3). Additionally, on two separate occasions in the three month period before the fire, maintenance personnel checked the smoke detector or alarm in Ms. Beavers' apartment and found it to be in good working order. (*Id.* at ¶ 5). Ultimately, however, it was the duty of Marilyn Beavers to ensure that the smoke detector or alarm continued to function.

Marilyn Beavers agreed in the lease agreement to "provide reasonable care (including changing batteries) and perform interim testing of smoke detectors to [ensure] they are in working order." (Lease Agreement, Exhibit 1-A, at VII, G). Thus, even if the smoke detector or alarm had not sounded, it would not have been a violation of any duty owed by the Housing Authority Defendants.

The Housing Authority Defendants complied with their duties relevant to the harm in this case – death by smoke inhalation – when they ensured that a working smoke alarm was installed in Marilyn Beavers' apartment. They also tested the smoke alarm when present in the Beavers' apartment on December 20, 2011 and January 26, 2012, and found it to be in good working order on those dates. (Exh. 1, Nix Aff. at ¶ 5).

Once the smoke alarm was installed, the Housing Authority Defendants's duty to Plaintiffs' decedents was fulfilled. No further duty was owed to Plaintiffs' decedents in order to protect them from harm due to smoke

inhalation.   To hold otherwise would be to ignore the requirements of the lease agreement in this case and would effectively make the Housing Authority Defendants insurers for the safety of their residents, which Arkansas law prohibits.  *See Bartley*, *supra.*

> **D.** **Plaintiffs have no evidence that the Housing Authority Defendants breached a duty owed to Marilyn Beavers and her children and which proximately caused their deaths.**

Plaintiffs' entire theory of negligence against the Housing Authority Defendants is that they "failed to ensure properly working and accessible smoke alarms/detectors were properly installed" in the Beavers' apartment unit.  (Am. Compl. at ¶ 98).   In fact, residual evidence shows that the smoke alarm worked as intended on the night of the fire.   As described by Daniel Gottuk, an expert witness for the Housing Authority Defendants, it is clear from his post-fire inspection of the smoke alarm that its horn sounded at the time of the fire.   (Exh. 2, Gottuk Aff., at ¶¶ 7-14).   Dr. Gottuk examined the soot deposition around the smoke alarm horn, from which he determined that the alarm sounded.   (*Id.* at ¶¶ 8-10, 13).   Anecdotally, Dr. Gottuk's conclusion is consistent with the physical evidence which suggests that the smoke alarm was displaced from the ceiling and fell to the floor at some point after the fire. (*Id.* at ¶¶ 11, 13).   As a matter of common sense, this suggests not only that the smoke alarm sounded but also that it was audible to the occupant who knocked it down.

As a matter of law, the Housing Authority Defendants fulfilled any duty they owed to Ms. Beavers and her four children when they installed a working

smoke detector or alarm in the leased apartment.  At that point, it became Ms. Beavers' duty to ensure that the smoke detector or alarm continued to work. Even assuming, however, solely for purposes of this motion, that the Housing Authority Defendants owed some additional duty in connection with the smoke alarm, the evidence supports only one reasonable conclusion -- the smoke alarm sounded on the night of the fire.  Therefore, no evidence exists from which a reasonable jury could conclude that the Housing Authority Defendants breached any duty that was owed to Plaintiffs or their decedents.

To allow the jury to consider claims against the Housing Authority Defendants would be to run afoul of the maxim that the fact that an accident occurred is not, of itself, evidence of negligence or fault on the part of anyone. See AMI (Civil) 603 (2015).  Plaintiffs have no evidence that any negligent act or omission committed by the Housing Authority Defendants proximately caused the deaths of Marilyn Beavers and her four children.  Plaintiffs have the burden to present such evidence or to face the dismissal of their claims on the merits.

### III.   Conclusion

Because there is no evidence from which a reasonable jury could make the necessary determination that the tragic deaths of Ms. Beavers and her four children were proximately caused by a negligent act or omission by any Housing Authority Defendant, the Housing Authority Defendants are entitled to judgment as a matter of law.

WHEREFORE, Separate Defendants Arkansas Housing Authorities Property & Casualty Self-Insured Fund, Inc., Evanston Insurance Company

and Phil Nix request that the Court enter an Order granting this Motion for Summary Judgment, dismissing with prejudice the Complaints filed in both of the consolidated cases, awarding costs, attorney's fees, and for all other just and proper relief.

/s/ William M. Griffin III
William M. Griffin III (#82069)
Edie R. Ervin (#93198)
FRIDAY ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, AR  72201-3522
(501) 376-2011
griffin@fridayfirm.com
eervin@fridayfirm.com

*Attorneys for Defendants, Arkansas Housing Authorities Property & Casualty Self-Insured Fund, Inc., Evanston Insurance Company and Phil Nix*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this ___ day of January, 2016, via the Court's ECF notification system, to the following counsel of record:

David Hodges
Attorney at Law
Centre Place – Fifth Floor
212 Center Street
Little Rock, AR  72201

William M. Hatchett
HATCHETT, DEWALT & HATCHETT
485 Orchard Lake Road
Pontiac, Michigan  48341

John W. Walker
Shawn G. Childs
JOHN W. WALKER, P.A.
1723 South Broadway
Little Rock, Arkansas  72206

Sheila F. Campbell
Attorney at Law
PO Box 939
North Little Rock, AR  72115

E. Dion Wilson
Attorney at Law
423 Rightor Street
Helena, AR  72342

John L. Wilkerson
Attorney at Law
P.O. Box 38
North Little Rock, AR  72115

Kathryn A. Pryor
Wright, Lindsey, Jennings
200 W. Capitol Avenue, Ste. 2300
Little Rock, AR  72201

Teresa Wineland
Kutak Rock LLP
124 West Capitol Avenue, Suite 2000
Little Rock, AR  72201

/s/ William M. Griffin III
William M. Griffin III (#82069)
FRIDAY ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, AR  72201-3522
(501) 370-1515
griffin@fridayfirm.com