## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

FURLANDARE SINGLETON, Individually and as
Administrator of the Estate of DEQUAN SINGLETON,
SYNDI SINGLETON, AND HAYLEE SINGLETON,
Decedents; and CLYDE HATCHETT, Individually,
and as Administrator of the Estate of EMILY
BEAVERS, Deceased                                                   **PLAINTIFFS**

**V.**                              **NO. 4:15-cv-00205-KGB**

ARKANSAS HOUSING AUTHORITIES PROPERTY
& CASUALTY SELF-INSURED, Inc.(Specifically,
THE JACKSONVILLE HOUSING AUTHORITY, a/k/a
THE MAX HOWELL PLACE HOUSING PROJECTS);
EVANSTON INSURANCE COMPANY, an Illinois
Corporation; PHIL NIX, in His Individual and Official
Capacity as Executive Director of The Jacksonville
Housing Authority; CITY OF JACKSONVILLE;
BRK BRANDS, INC.; JACKSONVILLE FIRE DEPT;
WAYNE TAYLOR; LARRY HAMSHER; CHRIS
McDONALD; TONY SUTHERLAND; DEWAN
LEWIS;  JOHN DOES 1 - 50; and JANE DOES 1- 50        **DEFENDANTS**

**AND**

MARILYN LOUISE BEAVERS, Individually, and as
Administrator of the Estate of MARILYN BEAVERS,
DECEASED

                                                                    **PLAINTIFFS**

**V.**

ARKANSAS HOUSING AUTHORITIES PROPERTY
& CASUALTY SELF-INSURED, INC. (Specifically,
THE JACKSONVILLE HOUSING AUTHORITY, a/k/a
THE MAX HOWELL PLACE HOUSING PROJECTS);
EVANSTON INSURANCE COMPANY, an Illinois
Corporation; PHIL NIX, in His Individual and Official

**Capacity as Executive Director of THE JACKSONVILLE**
**HOUSING AUTHORITY; BRK BRANDS, INC.;**
**CITY OF JACKSONVILLE; BRK BRANDS, INC.;**
**JACKSONVILLE FIRE DEPT; WAYNE TAYLOR;**
**LARRY HAMSHER; CHRIS McDONALD; TONY**
**SUTHERLAND; DEWAN LEWIS; and**
**JOHN DOES 1 - 10**                                    **DEFENDANTS**

## BRIEF IN SUPPORT OF RESPONSE TO THE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Marilyn Louise Beavers, Individually, and as Administrator of the Estate of Marilyn Beavers, deceased, in opposition of the Motion for Summary Judgment filed by Separate Defendants Wayne Taylor, Captain Larry Hamsher, Chris McDonald, Tony Southerland, Captain Dewan Laws, in their individual and official capacities; the City of Jacksonville, Arkansas ("the City"), and the Jacksonville Fire Department (collectively "City Defendants"), states for her Brief in Support of her Response as set forth below.

## SUMMARY JUDGMENT STANDARDS

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the non movant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Christoffersen v. Yellow Book U..A., 526 F.3d 947, 949 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; Pope v. ESA Servs., Inc. 406 F.3d 1001, 1006 (8th Cir. 2005)). This burden may be satisfied by the moving party by presenting specific evidence on a particular issue or by indicating "an absence

2

of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 47 U.S. 317, 325 (1986).   Once the movant has met this burden, the non-movant cannot simply rest on the bare allegations of the pleadings; rather, that party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## FACTUAL BACKGROUND

Plaintiff disputes much of the factual background set forth by the City Defendants, based on statements made by Jennifer Gray, who called 911 the morning of March 22, 2012, and observed and interacted with the firefighters who responded to the call.  Attached as Exhibit A to Beavers's Response is the Affidavit of Jennifer Gray.  In that Affidavit, Ms. Gray states that she woke up that morning at 5:50a.m. and immediately smelled smoke.  Affidavit of Jennifer Gray at ¶ 1.  Ms. Gray tried to determine where the smell was coming from, but could not find a source, so she called 911 "because [she] was afraid a fire might be in the walls somewhere where [she] couldn't see it." <u>Id.</u> at ¶ 2.  Ms. Gray states that when the fire department arrived, "[t]hey were playing and not taking this serious. My son's rubber snake was on the living room floor and one fireman was teasing the others with it." <u>Id.</u> at ¶ 4.  The Jacksonville Police Department's Witness Interview indicates that Ms. Gray made a similar statement to the Police.  See Exhibit B.

3

Ms. Gray states that the fire department got the thermal detection device out and they said they didn't see any evidence of anything even though one fireman went up into the attic access.  ″ Id. at ¶ 5.  Ms. Gray further stated that "[h]e didn't go all the way into the attic."  This is notable considering the statement in the Cause and Origin Report authored by Fire Marshall Mike Williams, which stated: "The fire was primarily confined to the kitchen with some extension into the attic and dining area.  The burn patters in the attic were heavier in the area of the vent hood exhaust duct becoming less intense further away from the exhaust duct.  A large area in the attic was blackened extending on both the south and north part of the roof and structural members."  Docket No. 137-10 at p. 2.

Ms. Gray's Affidavit further states that when the firemen finished walking through her house, they walked outside and she went outside with them. Jennifer Gray Affidavit at  ¶ 6.  Ms. Gray states that the firemen said that she was smelling a fire that was far away across the highway. Id. Ms. Gray notes "[b]ut the smell was stronger inside my apartment and my windows were closed and that's why it didn't make sense for the firemen to say that the smoke smell was coming from somewhere else. There was no smoke visually in the area outside." Id.

Ms. Gray then states that the firemen went to the front of Ms. Beavers' apartment and knocked on the door and there was no answer. Id. at ¶ 7. Ms.

Gray states that she stayed outside with the firemen the entire time that they were there and that "[t]he firemen did not walk around the entire building. They only went to the front of her house." Id. at ¶¶ 8–9.  This contradicts the firemen's statements regarding the perimeter search, and is also notable in light of the Cause and Origin Report authored by Fire Marshall Mike Williams, which notes that the single window located on the south exterior wall of the kitchen was broken by fire and smoke stains were observed on the exterior wall and eaves above the window.  Docket No. 137-10 at p. 1. The Cause and Origin report also notes that the Housing Authority maintenance staff who entered Marilyn Beavers's apartment "described conditions as a smoke thick enough to obscure vision down to approximately waist level, and heat comparable to a hot summer day"  and that one of them opened the rear door to "vent the smoke". Docket No. 137-10 at p. 3.  This casts doubts as to whether the fire was fully extinguished at the time of the firefighters' arrival.   Furthermore, broken window and smoke stains indicate that either the firefighters did not perform a sufficient (or any) perimeter check, or that the fire was not completely extinguished at the time the firefighters were there.  Mr. Gray states:

> I think the smell of smoke that you could smell outside was coming from Ms. Beavers' apartment. I thought they were completely insane for saying the smoke smell was coming from far away.

> Jennifer Gray Affidavit at ¶ 10.

5

All of the evidence set forth above demonstrates that issues of fact exist as to the constitutional claims asserted by Beavers against the City Defendants. Furthermore, as discussed below, Beavers constitutional claims against the City Defendants are legally viable, and as such, the Motion for Summary Judgment should be denied.

## THE CITY DEFENDANTS ARE LIABLE FOR PLAINTIFF'S CONSTITUTIONAL CLAIMS

Plaintiff acknowledges the general rules regarding constitutional claims arising out of a city or state's alleged failure to protect its citizens:

> [T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.

> DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 196, 109 S. Ct. 998, 1003, 103 L. Ed. 2d 249 (1989).

There are two exceptions to the general rule that a state is not required by the Due Process Clause "to protect the life, liberty, and property of its citizens against invasion by private actors." _DeShaney,_ 489 U.S. at 195, 109 S.Ct. 998.  *442 First, the special-relationship exception applies to limited circumstances where the state has "affirmative duties of care and protection with respect to _particular individuals._" _Id._ at 198, 109 S.Ct. 998 (emphasis added). Plaintiff acknowledges that this is a narrow exception.  Kruger v.

Nebraska, 820 F.3d 295, 302 (8th Cir. 2016).  This exception usually involves situations in which a citizen is in custody, and includes the duty to provide adequate medical care to incarcerated prisoners and to provide involuntarily committed mental patients with such services as are necessary to ensure their reasonable safety from themselves and others. Glasgow v. Nebraska, 819 F.3d 436, 441–42 (8th Cir. 2016).

Plaintiffs ask the Court to hold that the City Defendants did have a specific, affirmative duty to Marilyn Beavers and her children, in light of an Arkansas Statute and Jacksonville City Code provision.  These provisions demonstrate that the City was required to, and did, assume a duty to provide fire protection to citizens like Marilyn Beavers and her children.

Ark. Code Ann. § 14-53-101 states:

(a)(1) Except as provided in subdivision (a)(2) of this section, the city council **shall** establish fire departments and provide them with proper engines and such other equipment as shall be necessary to extinguish fires and preserve the property of the city and of the inhabitants from conflagration.

(b) The city council shall promulgate rules to govern the fire department that the city council deems expedient.

Ark. Code Ann. § 14-53-101.

Jacksonville City Code provision 2.20.010 states that "[t]he Jacksonville Fire Department, the object and purpose of which is the control and prevention

of fire and the protection of life and property within the City, is created."  The

United States Supreme Court has stated:

> A State may, through its courts and legislatures, impose such
> affirmative duties of care and protection upon its agents as it
> wishes. But not "all common-law duties owed by government
> actors were … constitutionalized by the Fourteenth Amendment."
>
> DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189,
> 202, 109 S. Ct. 998, 1007, 103 L. Ed. 2d 249 (1989) (citing Daniels
> v. Williams, supra, 474 U.S., at 335, 106 S.Ct., at 667.).

In the present case, Plaintiff asks the Court to hold that the statutes did

create an affirmative duty on the part of the City Defendants.  By way of

comparison, Reedy v. Mullins, 456 F.Supp. 955 (W.D. Va. 1978), cited in the

city Defendants' Brief, notes that in that case, "Plaintiffs have failed to make

a comparable showing that Virginia case law requires adequate municipal fire

protection." Id. at 957.  Similarly, in Jackson v. Byrne, 738 F.2d 1443 (7th Cir.

1984), while the Jackson court rejects the argument that the city acquired a

constitutional duty to provide services once it established itself as the provider

of fire protection, the Jackson court never indicates the existence of an statute

requiring the city to establish a fire department.

Considering the provisions cited above, in conjunction with the deliberate

indifference exhibited by the City Defendants, and that the City Defendants'

actions and omissions shock the conscience, Plaintiff asks the Court to deny the

Motion for Summary Judgment.

The second exception to the general rule cited above is "the state-created-danger" exception.  Plaintiff has moved the Court to allow her to amend her Complaint as to allege a count for state-created danger against the Housing Authority Defendants.  While the proposed amended complaint does not expressly refer to the City Defendants in regards to the proposed count alleging state-created danger, the state-created danger exception should be applicable here, because both the Housing Authority Defendants and the City Defendants are subdivisions of the City of Jacksonville.

In the Motion for Summary Judgment originally filed by the City of Jacksonville, Arkansas in Pulaski County Circuit Court on September 20, 2013, the City argued that "the Jacksonville Fire Department is not a legal entity separate from the City of Jacksonville and as such cannot be sued.  (Citing *Ketchum v. City of West Memphis, Arkansas*, 974 F.2d 81, 82 (8th Cir. 1992)).  In Defendant Jackonsville Housing Authority's Brief in Support of Motion for Summary Judgment, originally filed in Pulaski County Circuit Court on January 29, 2015, the Housing Authority described itself as "a political subdivision."  Furthermore, the deposition testimony of Phil Nix demonstrates the connection between the City of Jacksonville and the Housing Authority.

    A.    The housing authority is determined by the city government.  They determine whether or not they want to have a federal housing program within their municipality.  They then apply

to HUD, US House of Urban Development for that charter. Then HUD             grants the application, approves or disapproves, and that took place sometime in the City of Jacksonville in the 1960s.

Q.    So how did this facility that's -- we'll call it the Max Howell. Isn't that the name of it?

A.    Yes, sir.

Q.    How did that get built?

A.    It was built with US of House of Urban Development grant funding money.

Q.    So they gave it to the city to build and it would be operated under the authority of the HUD through the city.  Is that sort of a shorthand way it worked?

A.    That would be a close summation, yes.  It is a separate entity than the City of Jacksonville, but the Jacksonville City Council has input of recommending board members to that agency.  It is all federally funded, though.

Q.    So I take it the housing authority would be a part of the City of Jacksonville or would it be a part of the HUD or a quasi organization?

A.    In my knowledge in 25 years of housing, it is a part of HUD and it is also a part of the local government.

Q.    Sort of a combination of the two, I guess?

A.    Yes.

Exhibit C, Deposition of Phil Nix at 15–16.

Put simply, the "state-created danger" alleged in Plaintiff's proposed amended complaint could be considered to have been created either by the Housing Authorities Defendants standing alone, or in their capacity as a "political subdivision" of the City of Jacksonville.

Plaintiff does not make this argument in an attempt to relieve the Housing Authority Defendants as to any liability they might have in regards to Plaintiff's proposed State-Created Danger, or to otherwise alter its arguments or allegations against the Housing Authority Defendants.  Plaintiff raises these arguments as to the City Defendants to demonstrate that the "state-created danger" exception to the general rule that the Due Process Clause generally confers no affirmative right to governmental aid, is applicable in this case when all the actions and omissions are considered in context of the City as a whole.

The Eighth Circuit has set forth the elements to prove a Section 1983 claim pursuant to a state-created danger theory:

> 1) they were members of a limited, precisely definable group, 2) [the government's] conduct put them at significant risk of serious, immediate, and proximate harm, 3) the risk was obvious or known to [the government], 4) [the government] acted recklessly in conscious disregard of the risk, and 5) in total, [the government's] conduct shocks the conscience.

> Hart v. City of Little Rock, 432 F.3d 801, 805 (8th Cir. 2005).

Plaintiff incorporates by reference the allegations made in her Proposed Third Amendment to Complaint regarding State-Create Danger.

Here, Marilyn Beavers and her children were members of a limited, precisely definable group as a recipient of Section 8 housing, because the purpose of the Section 8 program is to aid lower-income families and the Section 8 program sets certain income requirements.

Plaintiff incorporates by reference the allegations made in her Proposed Third Amendment to Complaint regarding State-Create Danger.  The conduct of the Housing Authority Defendants, as described in the proposed amended complaint, put Marilyn Beavers and her children at significant risk of serious, immediate, and proximate harm.

The risk posed to Marilyn Beavers and her children was obvious or known to the Housing Authority Defendants, a political subdivision of the City. Therefore, it should likewise be considered that the risk was obvious or known to the City, of which the Fire Department is not a separate legal entity.  Just as the Housing Authority acted in conscious disregard of the risk, the City Defendants did also by failing to properly investigate the circumstances of the call to the Max Howell Place Project.  The City Defendants' conduct, as described in the Affidavit of Jennifer Gray, shocks the conscience.

Finally, to the extent that the City Defendants' qualified immunity arguments rely upon their contention that no constitutional violation exists in this case, for the reasons discussed above, a constitutional violation did exist on the part of the City Defendants, and they City Defendants should not be entitled to qualified immunity.

**MARILYN LOUISE BEAVERS, Individually,
and as Administrator of the Estate of
MARILYN BEAVERS, Deceased, Plaintiff**

**By:      /s/ David Hodges                        
DAVID A. HODGES
Attorney at Law
212 Center Street, Fifth Floor
Little Rock, AR 72201-2429
Arkansas Bar No. 65021
Telephone: 501-374-2400
Facsimile:   501-374-8926
E-Mail: david@hodgeslaw.com**

**and**

**E. DION WILSON
Attorney at Law
423 Rightor Street
Helena, AR 72342
Telephone: 870-338-6487
Facsimile: 870-338-8030**

13

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Mr. William M. Hatchett
Hatchett, DeWalt, Hatchett
485 Orchard Lake Road
Pontiac, MI 48341

Ms. Sheila Campbell
Attorney at Law
P.O. Box 939
North Little Rock, AR 72115

Mr. William Griffin
Friday, Eldredge Clark
400 W. Capitol Avenue, Suite 2000
Little Rock, AR 72201-3493

Mr. John Walker
Mr. Shawn Childs
Walker Law Firm
1723 Broadway
Little Rock, AR 72206

Ms. Kathryn A. Pryor
Wright, Lindsey & Jennings
200 W. Capitol Avenue, Suite 2300
Little Rock, AR 72201

Mr. Baxter D. Drennon
Wright, Lindsey & Jennings
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201

Mr. John L. Wilkerson
Attorney at Law
301 W. 2nd Street
North Little Rock, AR 72115

Mr. James H. Heller
Cozen O'Conner
1900 Market Street
Philadelphia, PA 19103

Ms. Teresa Wineland
Kutak Rock, LLP
124 W. Capitol Avenue, Suite 2000
Little Rock, AR 72201

Mr. E. Dion Wilson
Wilson & Associates
423 Rightor Street, Suite One
Helena, AR 72342-3219

                                    **/s/ David Hodges**