## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

FURLANDARE SINGLETON, Individually and as
Administrator of the Estate of DEQUAN SINGLETON,
SYNDI SINGLETON, AND HAYLEE SINGLETON,
Decedents; and CLYDE HATCHETT, Individually,
and as Administrator of the Estate of EMILY
BEAVERS, Deceased                                                    PLAINTIFFS

V.                                   NO. 4:15-cv-00205-KGB

ARKANSAS HOUSING AUTHORITIES PROPERTY
& CASUALTY SELF-INSURED, Inc.(Specifically,
THE JACKSONVILLE HOUSING AUTHORITY, a/k/a
THE MAX HOWELL PLACE HOUSING PROJECTS);
EVANSTON INSURANCE COMPANY, an Illinois
Corporation; PHIL NIX, in His Individual and Official
Capacity as Executive Director of The Jacksonville
Housing Authority; CITY OF JACKSONVILLE;
BRK BRANDS, INC.; JACKSONVILLE FIRE DEPT;
WAYNE TAYLOR; LARRY HAMSHER; CHRIS
McDONALD; TONY SUTHERLAND; DEWAN
LEWIS;  JOHN DOES 1 - 50; and JANE DOES 1- 50        DEFENDANTS

AND

MARILYN LOUISE BEAVERS, Individually, and as
Administrator of the Estate of MARILYN BEAVERS,
DECEASED

                                                                     PLAINTIFFS

V.

ARKANSAS HOUSING AUTHORITIES PROPERTY
& CASUALTY SELF-INSURED, INC. (Specifically,
THE JACKSONVILLE HOUSING AUTHORITY, a/k/a
THE MAX HOWELL PLACE HOUSING PROJECTS);
EVANSTON INSURANCE COMPANY, an Illinois
Corporation; PHIL NIX, in His Individual and Official

**Capacity as Executive Director of THE JACKSONVILLE
HOUSING AUTHORITY; BRK BRANDS, INC.;
CITY OF JACKSONVILLE; BRK BRANDS, INC.;
JACKSONVILLE FIRE DEPT; WAYNE TAYLOR;
LARRY HAMSHER; CHRIS McDONALD; TONY
SUTHERLAND; DEWAN LEWIS; and
JOHN DOES 1 - 10**                                        **DEFENDANTS**

## RESPONSE TO THE CITY DEFENDANTS' STATEMENT OF FACTS

Plaintiff Marilyn Louise Beavers, Individually, and as Administrator of the
Estate of Marilyn Beavers, deceased, states for her Response to Separate
Defendants' Wayne Taylor, Captain Larry Hamsher, Chris McDonald, Tony
Sutherland, Captain Dewan Laws, in their individual and official capacities, the
City of Jacksonville, Arkansas, and the Jacksonville Fire Department's
(collectively referred to as the "City Defendants") Statement of Undisputed
Material Facts (Docket No. 137), as follows:

**City Defendants' Statement of Fact No. 1:**

At 5:46 a.m. on March 22, 2012, Jennifer Gray ("Ms. Gray") called 911
and reported that she smelled smoke inside her apartment in the Max Howell
Place Apartments. (Transcript of 911 Call, attached and hereinafter referred to
as *Exhibit A)*

**Plaintiff's Response:**

Admitted.  Ms. Gray stated that she smelled "a strong smell of smoke"
and suggested maybe it was her neighbor.  Docket No. 137-1 at p. 2.

**City Defendants' Statement of Fact No. 2:**

At the same time, the Jacksonville Fire Department was fighting a different fire approximately a "half mile away" across the interstate. (Deposition of Hamsher, attached and hereinafter referred to as *Exhibit E,* 14:20-15:3; Deposition of McDonald, attached and hereinafter referred to as *Exhibit D,* 10:4-10; Deposition of Taylor, attached and hereinafter referred to as *Exhibit* G, 9:15-17)

**Plaintiff's Response:**

Admitted.

**City Defendants' Statement of Fact No. 3:**

Because of the other fire, the 911 dispatcher told Ms. Gray that "across the interstate, we have a fire . .. and the wind would carry [the smoke] that way." (911 Call, *Exhibit A)*

**Plaintiff's Response:**

Admitted that the 911 dispatcher made this statement to Ms. Gray. Plaintiff cannot be certain as to the accuracy of the portion of the statement regarding the wind carrying the smoke in the direction of Ms. Gray's apartment, and, therefore, denies the statement to the extent that this portion of the statement was accurate.

**City Defendants' Statement of Fact No. 4:**

Ms. Gray insisted, however, that she smelled smoke inside her home and she only smelled it in her daughter's room and her bathroom. (911 Call, *Exhibit A)*

**Plaintiff's Response:**

Admitted.

**City Defendants' Statement of Fact No. 5:**

The dispatcher then advised Ms. Gray to get her daughter out of the house (Ms. Gray's daughter was not home) and go outside to see if she smelled smoke outside, too. (911 Call, *Exhibit A)*

**Plaintiff's Response:**

Admitted.

**City Defendants' Statement of Fact No. 6:**

Ms. Gray went outside, but she did not smell smoke outside the apartment. (911 Call, *Exhibit A)*

**Plaintiff's Response:**

Admitted.

**City Defendants' Statement of Fact No. 7:**

The dispatcher told her, "Ok, I'm going to have an engine out there as soon as possible." (911 Call, *Exhibit A)*

**Plaintiff's Response:**

Admitted.

**City Defendants' Statement of Fact No. 8:**

At 5:50am, the Jacksonville Fire Department was dispatched to Ms. Gray's home. (Jacksonville Basic Fire Report, attached and hereinafter referred to as *Exhibit B,* p.1)

**Plaintiff's Response:**

Admitted.

**City Defendants' Statement of Fact No. 9:**

Officers Tony Southerland and Chris McDonald, who were working the fire approximately a "half mile away" across the interstate, arrived first at 6:00am- these two officers were working at the time as medics and were in an ambulance ("Medic 2") and not a fire engine. (Basic Fire Report, *Exhibit B,* pp. 1-2; Hamsher Depo, *Exhibit D,* 10:4-10; Deposition of Southerland, attached and hereinafter referred to as *Exhibit* C, 7:18-21)

**Plaintiff's Response:**

Admitted.

**City Defendants' Statement of Fact No. 10:**

Captain Larry Hamsher and Lieutenant Wayne Taylor arrived two minutes later in a fire engine ("Engine 4"). (Basic Fire Report, *Exhibit B;* Depo of Taylor,

*Exhibit* G, 8:5-7; McDonald Depo, *Exhibit D,* 9:24-10:3)

**Plaintiff's Response:**

Admitted.

**City Defendants' Statement of Fact No. 11:**

Upon their arrival, Officer McDonald made contact with Ms. Gray, "who was standing outside." (McDonald Depo, *Exhibit D,* 9:24-25; 10:1-2)

**Plaintiff's Response:**

Admitted.

**City Defendants' Statement of Fact No. 12:**

Ms. Gray told Officer McDonald "she had smelled smoke earlier and it had went away … and that she had smelled smoke again, and that's when she called 911." (McDonald Depo, *Exhibit D,* 11:4-8)

**Plaintiff's Response:**

Admitted that Officer McDonald testified as stated above.  Denied to the extent that Plaintiff is without knowledge as to whether Ms. Gray stated that she had smelled smoke earlier and that it went away, because neither the 911 call, nor Ms. Gray's Affidavit, nor the Jacksonville Police Department's Witness Interview, mention that Ms. Gray previously smelled smoke and it went away.

**City Defendants' Statement of Fact No. 13:**

After this brief conversation, Officer McDonald "made a quick walk through just prior to the arrival of Engine 4 … to make a quick observation of the entire residence to see if there was any obvious smoke, fire, or anything that needed to be noted .. . There was none." (McDonald Depo, *Exhibit D,* 10: 1-2; 13: L6· 9)

**Plaintiff's Response:**

Admitted that Officer McDonald testified as stated above.  Denied to the extent that the statement attempts to suggest that Officer McDonald's observation and initial inspection was sufficient under the circumstances of this case.  Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that Officer McDonald performed all of the actions he stated he did, and denies this statement to that extent. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 14:**

Officer Southerland, too, went in to Ms. Gray's apartment: "I proceeded down the hallway, feeling low and high down the halls. Opened each door that·· the doors were closed. When I got to the end of the hallway, I felt that wall and come back down the other wall feeling low and high. And it had kind of a low

ceiling, so I was able to reach up and put my hand on the back of the ceiling."

(Southerland Depo, *Exhibit* C, 8:22-9:3)

**Plaintiff's Response:**

Admitted that Officer Southerland testified as stated above.  Denied to the extent that the statement attempts to suggest that Officer Southerland's observation and inspection was sufficient under the circumstances of this case. Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that Officer Southerland performed all of the actions he stated he did, and denies this statement to that extent. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 15:**

All told, Officer Southerland placed the back of his hand on "all the walls in every room" of Ms. Gray's apartment. (Southerland Depo, *Exhibit* C, 20:4-8)

**Plaintiff's Response:**

Admitted that Officer Southerland testified as stated above.  Denied to the extent that the statement attempts to suggest that Officer Southerland's observation and inspection was sufficient under the circumstances of this case. Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain

8

that Officer Southerland performed all of the actions he stated he did, and denies this statement to that extent. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 16:**

And, like Officer McDonald, Officer Southerland "could not feel any heat" during his search. (Southerland Depo, *Exhibit* C, 8:22-9:11)

**Plaintiff's Response:**

Admitted that Officer Southerland testified as stated above. Denied to the extent that the statement attempts to suggest that Officer Southerland's observation and inspection was sufficient under the circumstances of this case. Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that Officer Southerland sufficiently performed his search, and denies this statement to that extent, because if the search was not properly performed, then heat could have been present. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 17:**

It should be noted that Ms. Gray's apartment is a mirror image of Ms. Beaver's, and the two apartments share a common wall (E McDonald Depo, *Exhibit D,* 27:13-15; 28:12-14).

**Plaintiff's Response:**

Admitted.

**City Defendants' Statement of Fact No. 18:**

On either side of that common wall is the same room of both apartments bedroom 3, a closet, the full bath, the pantry, and the storage area/room of one apartment share a wall with the other apartments' counterpart. (McDonald Depo, *Exhibit D,* 27:13-15)

**Plaintiff's Response:**

Admitted.

**City Defendants' Statement of Fact No. 19:**

Again, Officer Southerland detected no heat from any of those walls; nor did Officer Southerland smell any smoke. (Southerland Depo, *Exhibit* C, 9:9-14)

**Plaintiff's Response:**

Admitted that Officer Southerland testified as stated above.  Denied to the extent that the statement attempts to suggest that Officer Southerland's observation and inspection was sufficient under the circumstances of this case. Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that Officer Southerland sufficiently performed his search, and denies this statement to that extent, because if the search was not properly performed,

then heat or smoke could have been present. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 20:**

Officer Southerland then left Ms. Gray's apartment and went to the front door of Apartment 3A, Ms. Beavers' apartment, and "banged on the door very loudly" to see if the occupants of that apartment "experienced any smoke." (Southerland Depo, *Exhibit* C, 9:19-25; 10:1)

**Plaintiff's Response:**

Admitted that Officer Southerland testified as stated above.  Denied to the extent that the statement attempts to suggest that Officer Southerland's efforts were sufficient under the circumstances of this case.  Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that Officer Southerland sufficiently investigated the possibility of a fire in the Beavers apartment. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 21:**

While banging, he said "Jacksonville Fire Department. Could you come to the door, please." (Southerland Depo, *Exhibit* C, 10:6-7)

**Plaintiff's Response:**

Admitted that Officer Southerland testified as stated above.  Denied to the extent that the statement attempts to suggest that Officer Southerland's efforts were sufficient under the circumstances of this case.  Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that Officer Southerland sufficiently investigated the possibility of a fire in the Beavers apartment. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 22:**

However, Officer Southerland heard no movements inside Ms. Beavers' apartment. (Southerland Depo, *Exhibit* C, 10:8-9)

**Plaintiff's Response:**

Admitted that Officer Southerland testified as stated above.  Denied to the extent that the statement attempts to suggest that Officer Southerland's efforts were sufficient under the circumstances of this case.  Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that Officer Southerland sufficiently investigated the possibility of a fire in the Beavers apartment. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 23:**

Officer Southerland then looked through a small slit in the bottom of a pulled down curtain covering a window on the front ("A") side of the apartment while standing three inches away. The window was part of a bedroom ("Bedroom 3"), and there was a light on in Bedroom 3. (Basic Fire Report, *Exhibit B,* p. 2; Southerland Depo, *Exhibit* C, 10:10-17, 19:10-15, 22:15-25, 23:4-6; House Diagram, attached and hereinafter referred to as *Exhibit F)*

**Plaintiff's Response:**

Admitted that Officer Southerland testified as stated above.  Denied to the extent that the statement attempts to suggest that Officer Southerland's efforts were sufficient under the circumstances of this case.  Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that Officer Southerland sufficiently investigated the possibility of a fire in the Beavers apartment. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 24:**

All of the other windows on the A side of the apartment had a mesh screen that prevented Southerland from seeing inside. (Southerland Depo, *Exhibit* C, 19:5-25; *House Diagram, Exhibit F)*

**Plaintiff's Response:**

Admitted that Officer Southerland testified as stated above.  Denied to the extent that the statement attempts to suggest that Officer Southerland's efforts were sufficient under the circumstances of this case.  Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that Officer Southerland sufficiently investigated the possibility of a fire in the Beavers apartment. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 25:**

While looking through the slit in that window, Officer Southerland was able to see across Bedroom 3 into the hallway and also what he thought was a bathroom. (Southerland Depo, *Exhibit* C, 10:18-11:12, 23:10-18; House Diagram, *Exhibit F)*

**Plaintiff's Response:**

Admitted that Officer Southerland testified as stated above.  Denied to the extent that the statement attempts to suggest that Officer Southerland's efforts were sufficient under the circumstances of this case.  Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that Officer

Southerland sufficiently investigated the possibility of a fire in the Beavers apartment. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 26:**

Officer Southerland saw nothing to indicate a fire was happening: "Q: And into the areas where you could see, you saw no hint of smoke; haze; or fire? A: No, ma'am." *(Exhibit C, 11:15-23; Exhibit B, p.2)*

**Plaintiff's Response:**

Admitted that Officer Southerland testified as stated above.  Denied to the extent that the statement attempts to suggest that Officer Southerland's efforts were sufficient under the circumstances of this case.  Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that Officer Southerland sufficiently investigated the possibility of a fire in the Beavers apartment. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 27:**

Captain Hamsher and Lieutenant Taylor arrived on the scene just as Officer Southerland was heading back to Ms. Gray's apartment after checking the window of Ms. Beavers' apartment. *(Exhibit D, 13:16-18; Exhibit C, 11:24-25; Exhibit B, p.1)*

15

**Plaintiff's Response:**

Admitted.

**City Defendants' Statement of Fact No. 28:**

Upon his arrival, Captain Hamsher instructed Officer McDonald to proceed with a thermal image scan of the entire interior of Ms. Gray's residence since no fire was indicated after the officers "examin[ed] the residence by senses: look, feel, touch." *(Exhibit D,* 14:11-16; Deposition of Hamsher, attached and hereinafter referred to as *Exhibit E,* 15:15-16:10-15)

**Plaintiff's Response:**

Admitted that Captain Hamsher testified as stated above.  Admitted that the thermal image device was used.  See Affidavit of Jennifer Gray. However, denied to the extent that the statement attempts to suggest that the firefighters' efforts were sufficient under the circumstances of this case, or that a proper examination was conducted using either the officers' senses or the thermal image device.  Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that sufficient examinations took place. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 29:**

"[T]he fact that our sight nor our feel nor our hearing indicated any hostilities, any extreme heat or any that would indicate to us that there was a fire," meant that the thermal imager was "next in line in the investigative process." (Hamsher Depo, *Exhibit E,* 16:2-3, 7-10)

**Plaintiff's Response:**

Admitted that Captain Hamsher testified as stated above.  Admitted that the thermal image device was used.  See Affidavit of Jennifer Gray. However, denied to the extent that the statement attempts to suggest that the firefighters' efforts were sufficient under the circumstances of this case, or that a proper examination was conducted using either the officers' senses or the thermal image device.  Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that sufficient examinations took place. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 30:**

The thermal imager "detects variations in heat;" for instance, the thermal imager could determine whether a wall was 150, 200, 700, or even 1000 degrees Fahrenheit. (Hamsher Depo, *Exhibit E,* 8:25-9:1; 42:13-17)

**Plaintiff's Response:**

Without admitting that the thermal image device was used properly in this case, Plaintiff does admit the statement above.

**City Defendants' Statement of Fact No. 31:**

When the thermal imager detects elevated temperatures, that is evidence that there might be a fire. (Hamsher Depo, *Exhibit E,* 9:5-8)

**Plaintiff's Response:**

Without admitting that the thermal image device was used properly in this case, Plaintiff does admit the statement above.

**City Defendants' Statement of Fact No. 32:**

In scanning Ms. Gray's apartment, Officer McDonald "proceeded in a 'Z' pattern from the initial walk into the room. Again over the top, down all the way around;"he then performed a "'Z' of the wall and then went vertical in different patterns to find any temperature variance." This would have been done "on the inside of the wall and worked around the entire residence." (McDonald Depo, *Exhibit D,* 14:17-15:3)

**Plaintiff's Response:**

Admitted that Officer McDonald testified as stated above.  Denied to the extent that the statement attempts to suggest that Officer McDonald's efforts were sufficient under the circumstances of this case, or that Officer McDonald

properly used the thermal image device.  Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that Officer McDonald sufficiently investigated used the thermal image device or investigated the possibility of a fire in the Beavers apartment. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 33:**

During this 'Z' pattern search, the temperatures were between 65 and 73; these temperatures were "normal … room temperature." (McDonald Depo, *Exhibit D,* 15:4-7; Hamsher Depo, *Exhibit E,* 16:23-25; 17: 1-2)

**Plaintiff's Response:**

Admitted that Officer McDonald testified as stated above.  Denied to the extent that the statement attempts to suggest that Officer McDonald's efforts were sufficient under the circumstances of this case, or that Officer McDonald properly used the thermal image device.  Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that Officer McDonald sufficiently investigated used the thermal image device or investigated the possibility of a fire in the Beavers apartment. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 34:**

Captain Hamsher ordered a thermal image scan of Ms. Gray's attic area; this area is shared by both Ms. Beavers' apartment and Ms. Gray's. (McDonald Depo, *Exhibit D,* 13:24-14:2; *Exhibit B,* p. 1)

**Plaintiff's Response:**

Admitted that Officer McDonald testified as stated above.  Admitted that the thermal image device was used.  See Affidavit of Jennifer Gray. However, denied to the extent that the statement attempts to suggest that the thermal image device was properly or sufficiently used in this case.  Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that sufficient examination or use of the thermal image device took place. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 35:**

Officer McDonald retrieved a ladder from the fire engine, and Lieutenant Taylor volunteered to scan the attic. (McDonald Depo, *Exhibit D,* 14:11-16; Deposition of Taylor, attached and hereinafter referred to as *Exhibit* G, 12:15-19)

**Plaintiff's Response:**

Admitted that Officers Taylor and McDonald testified as stated above. Admitted that the thermal image device was used.  See Affidavit of Jennifer Gray. However, denied to the extent that the statement attempts to suggest that the thermal image device was properly or sufficiently used in this case. Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that sufficient examination or use of the thermal image device took place. See Jennifer Gray Affidavit, JPD Witness Interview Log.  Furthermore, as Ms. Gray noted, one fireman went up into the attic access, but he did not go all the way into the attic.

**City Defendants' Statement of Fact No. 36:**

While he did not crawl through the attic, Lieutenant Taylor climbed the ladder and used the thermal imager to look for "visible signs of, you know, heat and – and flames." (Taylor Depo, *Exhibit* G, 12:17-23, 22:5-9)

**Plaintiff's Response:**

Admitted that Officer Taylor testified as stated above.  However, denied to the extent that the statement attempts to suggest that the thermal image device was properly or sufficiently used in this case, or that a proper inspection of the attic took place.  As noted in the Cause and Origin Report authored by

21

Fire Marshall Mike Williams: "The fire was primarily confined to the kitchen with some extension into the attic and dining area.  The burn patters in the attic were heavier in the area of the vent hood exhaust duct becoming less intense further away from the exhaust duct.  A large area in the attic was blackened extending on both the south and north part of the roof and structural members."  Docket No. 137-10 at p. 2.  This Report also noted that private fire investigator Jim Canton states that "he had found evidence of fire extension into the attic."  Docket No. 137-10 at p. 4.  Mike Williams also states in the Report that he entered Ms. Gray's apartment and "accessed the attic with a ladder" and that "[u]pon examining the attic with a flashlight, I observed an area of charring and sooting surrounding the ventihood duct of the fire damaged unit. A large area of sooting was present."  Docket No. 137-10 at p. 4.

Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that sufficient examination or use of the thermal image device took place, or that sufficient inspection of the attic took place. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 37:**

The thermal imager registered about 77 degrees; "it was a little different; because the attic might have been a little bit, you know, hot. But it wasn't a visible difference." (Taylor Depo, *Exhibit* G, 13:5-8)

**Plaintiff's Response:**

Admitted that Officer Taylor testified as stated above.  However, denied to the extent that the statement attempts to suggest that the thermal image device was properly or sufficiently used in this case, or that a proper inspection of the attic took place.  As noted in the Cause and Origin Report authored by Fire Marshall Mike Williams: "The fire was primarily confined to the kitchen with some extension into the attic and dining area.  The burn patters in the attic were heavier in the area of the vent hood exhaust duct becoming less intense further away from the exhaust duct.  A large area in the attic was blackened extending on both the south and north part of the roof and structural members."  Docket No. 137-10 at p. 2.  This Report also noted that private fire investigator Jim Canton states that "he had found evidence of fire extension into the attic."  Docket No. 137-10 at p. 4.  Mike Williams also states in the Report that he entered Ms. Gray's apartment and "accessed the attic with a ladder" and that "[u]pon examining the attic with a flashlight, I observed an area

of charring and sooting surrounding the ventihood duct of the fire damaged unit. A large area of sooting was present." Docket No. 137-10 at p. 4.

Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that sufficient examination or use of the thermal image device took place, or that sufficient inspection of the attic took place. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 38:**

Lieutenant Taylor found nothing to indicate that a fire was occurring: "Q: And did you conclude after you used the thermal imager on the entire crawlspace in the attic, which included Ms. Beaver's apartment, that there was no evidence of any fire; smoke; or other indications of a fire? A: Yes, ma'am." (Taylor Depo, *Exhibit* G, 23:4-8)

**Plaintiff's Response:**

Admitted that Officer Taylor testified as stated above.  However, denied to the extent that the statement attempts to suggest that the thermal image device was properly or sufficiently used in this case, or that a proper inspection of the attic took place.  As noted in the Cause and Origin Report authored by Fire Marshall Mike Williams: "The fire was primarily confined to the kitchen with some extension into the attic and dining area.  The burn patters in the attic

24

were heavier in the area of the vent hood exhaust duct becoming less intense further away from the exhaust duct.  A large area in the attic was blackened extending on both the south and north part of the roof and structural members." Docket No. 137-10 at p. 2.  This Report also noted that private fire investigator Jim Canton states that "he had found evidence of fire extension into the attic."  Docket No. 137-10 at p. 4.  Mike Williams also states in the Report that he entered Ms. Gray's apartment and "accessed the attic with a ladder" and that "[u]pon examining the attic with a flashlight, I observed an area of charring and sooting surrounding the ventihood duct of the fire damaged unit. A large area of sooting was present."  Docket No. 137-10 at p. 4.

Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that sufficient examination or use of the thermal image device took place, or that sufficient inspection of the attic took place. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 39:**

Meanwhile, Captain Hamsher ordered Officer Southerland to try again to make contact with any occupants in Ms. Beavers' apartment; and, too, Captain Hamsher ordered Lieutenant Taylor to do a perimeter search with the thermal

imager for signs of fire or smoke. (Basic Fire Report, *Exhibit B,* p. 2; Southerland Depo, *Exhibit C,* 12: 24-14:9; Hamsher Depo, *Exhibit E,* 20:9-18)

**Plaintiff's Response:**

Admitted that Officer Southerland and Captain Hamsher testified as stated above, but otherwise denied.  Denied to the extent that the statement attempts to suggest that the thermal image device was properly or sufficiently used in this case, or that a proper inspection–or any perimeter search--took place.

The Affidavit of Jennifer Gray states that "I stayed outside with the firemen the entire time that they were there.  The firemen did not walk around the entire building. They only went to the front of [Ms. Beavers's] house." Affidavit of Jennifer Gray, ¶¶ 8–9.  Furthermore, as noted in the Cause and Origin Report authored by Fire Marshall Mike Williams notes, the single window located on the south exterior wall of the kitchen was broken by fire and smoke stains were observed on the exterior wall and eaves above the window.  Docket No. 137-10 at p. 1.  This would mean that either the firefighters did not perform a sufficient (or any) perimeter check, or that the fire was not completely extinguished at the time the firefighters were there.

Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot

be certain that sufficient efforts to look for smoke or fire, or to otherwise investigate, took place. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 40:**

Officer Southerland returned to Ms. Beavers' apartment and, like before, banged on the door "quite loudly'' identifying himself as a fire fighter. (Southerland Depo, *Exhibit C,* 9:10-15; 13:9)

**Plaintiff's Response:**

Admitted that Officer Southerland testified as stated above.  Denied to the extent that the statement attempts to suggest that Officer Southerland's efforts were sufficient under the circumstances of this case.  Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that Officer Southerland sufficiently investigated the possibility of a fire in the Beavers apartment. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 41:**

And, like before, Southerland "could not get a response." (Southerland Depo, *Exhibit C,* 13:9)

**Plaintiff's Response:**

Admitted that Officer Southerland testified as stated above.  Denied to the extent that the statement attempts to suggest that Officer Southerland's

efforts were sufficient under the circumstances of this case.  Furthermore, in light of Ms. Gray's statement that the firemen were playing pranks on each other and "not taking this serious[ly]", Plaintiff cannot be certain that Officer Southerland sufficiently investigated the possibility of a fire in the Beavers apartment. See Jennifer Gray Affidavit, JPD Witness Interview Log.

**City Defendants' Statement of Fact No. 42:**

Captain Hamsher then ordered his officers to go back into Ms. Gray's apartment to do a "secondary investigation." (Hamsher Depo, *Exhibit E,* 24:21-25; 25:1-2; Basic Fire Report, *Exhibit B,* p. 2)

**Plaintiff's Response:**

Admitted that Captain Hamsher testified as stated above.  Denied to the extent that the statement attempts to suggest that any of the officers performed any investigation that would be considered sufficient or proper under these circumstances.

**City Defendants' Statement of Fact No. 43:**

Once again, no signs were found that would indicate fire (Basic Report, *Exhibit B,* p.1).

**Plaintiff's Response:**

Admitted that Basic Report reflects the statement above.  Denied to the extent that the statement attempts to suggest that any of the officers

performed any investigation that would be considered sufficient or proper under these circumstances.

**City Defendants' Statement of Fact No. 44:**

After the second inspection was finished, all four fire fighters left the scene - 23 minutes after arriving. (Basic Report, *Exhibit B,* pp. 1, 3; Hamsher Depo, *Exhibit E,* 27:9-11)

**Plaintiff's Response:**

Aside from this statement's implication that a proper inspection took place, which Plaintiff denies that it did, the remaining contents of this statement are admitted.

**City Defendants' Statement of Fact No. 45:**

Captain Dewan Laws, a captain of the Jacksonville Fire Department, is the current training officer in regard to the thermal imager for the Jacksonville Fire Department. (Deposition of Laws, attached and hereinafter referred to as *Exhibit H,* 6:9-14, 7:13-8:15)

**Plaintiff's Response:**

Admitted.

**City Defendants' Statement of Fact No. 46:**

Captain Laws did not have any involvement with the fire at the Max Howell apartment complex, nor did he have any responsibilities in training Taylor, McDonald, or Southerland. (Laws Depo, *Exhibit H,* 10:9-22, 14:14-21)

**Plaintiff's Response:**

Admitted.

**City Defendants' Statement of Fact No. 47:**

However, both Officer McDonald and Lieutenant Taylor had received in service training related to the use of the thermal imager before March 22, 2012. (McDonald Depo, *Exhibit D,* 8:1-9:5; Taylor Depo, *Exhibit* G, 22:13-21)

**Plaintiff's Response:**

Admitted that Officers McDonald and Lieutenant Taylor testified as stated above. However, denied to the extent this statement suggests any training officers received as to the use of the thermal imager was sufficient or proper, or that the thermal imager was used in a proper manner the morning of the subject fire.

**City Defendants' Statement of Fact No. 48:**

More importantly, as long as there is a systematic approach when using a thermal imager to determine where the smoke is coming from, it is largely up to the discretion of the company officer in how it is used and in what sequence it is used. (Laws Depo, *Exhibit H,* 11:10-12:17).

30

**Plaintiff's Response:**

Admitted that Captain Laws testified as stated above.  However, denied to the extent this statement suggests any training officers received as to the use of the thermal imager was sufficient or proper, or that the thermal imager was used in a proper manner the morning of the subject fire.

**City Defendants' Statement of Fact No. 49:**

No fire was blazing in Ms. Beavers' apartment when fire fighters arrived at 6:00am on March 22, 2012. *Exhibits* C-G.

**Plaintiff's Response:**

Denied.  While a fire might not have been "blazing", Plaintiff cannot yet state that there was no fire of any sort in Ms. Beavers's apartment at the time the firefighters arrived the morning of March 22, 2012.

This uncertainty is demonstrated by the firefighters' testimony, when compared to the Cause and Origin Report authored by Fire Marshall Mike Williams.  That Report notes that the single window located on the south exterior wall of the kitchen was broken by fire and smoke stains were observed on the exterior wall and eaves above the window.  Docket No. 137-10 at p. 1. However, the firefighters maintain they did a perimeter check of the building. This would mean that either the firefighters did not perform a sufficient (or any)

perimeter check, or that the fire was not completely extinguished at the time the firefighters were there.

**City Defendants' Statement of Fact No. 50:**

Ms. Beavers' and her children died of soot and smoke inhalation as a result of this "accidental house fire." *(Medical Examiner's Report,* attached as *Exhibit 1.)*

**Plaintiff's Response:**

Admitted.  However, denied to the extent that this statement suggests that there was no opportunity to assist Ms. Beavers or her children, or that proper and competent firefighting procedures and investigations would have made no difference as to the outcome in this case.

**City Defendants' Statement of Fact No. 51:**

"The fire was primarily confined to the kitchen with some extension into the attic and dining area." *(Jacksonville Fire Department Cause and Origin Report,* page 2 (first full paragraph), attached as *Exhibit J.)*

**Plaintiff's Response:**

Admitted.

**MARILYN LOUISE BEAVERS, Individually, and as Administrator of the Estate of MARILYN    BEAVERS, Deceased, Plaintiff**

**By:      /s/ David Hodges**

**DAVID A. HODGES**
**Attorney at Law**
**212 Center Street, Fifth Floor**
**Little Rock, AR 72201-2429**
**Arkansas Bar No. 65021**
**Telephone: 501-374-2400**
**Facsimile:   501-374-8926**
**E-Mail: david@hodgeslaw.com**

**and**

**E. DION WILSON**
**Attorney at Law**
**423 Rightor Street**
**Helena, AR 72342**
**Telephone: 870-338-6487**
**Facsimile: 870-338-8030**

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Mr. William M. Hatchett
Hatchett, DeWalt, Hatchett
485 Orchard Lake Road
Pontiac, MI 48341

Ms. Sheila Campbell
Attorney at Law
P.O. Box 939
North Little Rock, AR 72115

Mr. William Griffin
Friday, Eldredge Clark
400 W. Capitol Avenue, Suite 2000
Little Rock, AR 72201-3493

Mr. John Walker
Mr. Shawn Childs
Walker Law Firm
1723 Broadway
Little Rock, AR 72206

Ms. Kathryn A. Pryor
Wright, Lindsey & Jennings
200 W. Capitol Avenue, Suite 2300
Little Rock, AR 72201

Mr. Baxter D. Drennon
Wright, Lindsey & Jennings
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201

Mr. John L. Wilkerson
Attorney at Law
301 W. 2nd Street
North Little Rock, AR 72115

Mr. James H. Heller
Cozen O'Conner
1900 Market Street
Philadelphia, PA 19103

Ms. Teresa Wineland
Kutak Rock, LLP
124 W. Capitol Avenue, Suite 2000
Little Rock, AR 72201

Mr. E. Dion Wilson
Wilson & Associates
423 Rightor Street, Suite One
Helena, AR 72342-3219

___/s/ David Hodges_____