IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| **FURLANDARE SINGLETON, Individually** and as Administrator of the Estate of Dequan Singleton, Syndi Singleton, and Haylee Singleton, Decedents; and **CLYDE HATCHETT, Individually,** and as Administrator of the Estate of Emily Beavers, Deceased | **PLAINTIFFS** |
| v.   Case No.: 4:15-CV-205-KGB | |
| **ARKANSAS HOUSING AUTHORITIES PROPERTY & CASUALTY SELF-INSURED FUND, INC.,** *et al.* | **DEFENDANTS** |
| **MARILYN LOUISE BEAVERS, Individually** and as Administrator of the Estate of **MARILYN BEAVERS, DECEASED** | **PLAINTIFFS** |
| v. | |
| **ARKANSAS HOUSING AUTHORITIES PROPERTY & CASUALTY SELF-INSURED FUND, INC.,** *et al.* | **DEFENDANTS** |

### THE HOUSING AUTHORITY DEFENDANTS' TRIAL BRIEF

Come now Separate Defendants, Arkansas Housing Authorities Property & Casualty Self-Insured Fund, Inc., Jacksonville Housing Authority, Evanston Insurance Company, and Phil Nix ("The Housing Authority Defendants"), and respectfully submit their Trial Brief, pursuant to the Court's Final Scheduling Order (ECF No. 47).

#### FACTUAL BACKGROUND

On January 4, 2007, Marilyn Beavers entered into a residential lease agreement with the Jacksonville Housing Authority to rent Apartment 3-A, located on South

Simmons Street, in Jacksonville, Arkansas.  The lease was in effect on March 21-22, 2012, when a fire broke out in the apartment that caused the deaths of Ms. Beavers and her four children by smoke inhalation. Ms. Beavers had a post-mortem alcohol level of .14 percent.

At the time of the fire, a working smoke detector was installed in Ms. Beavers' apartment. It was the regular practice of Jacksonville Housing Authority to check the smoke detector or alarm when performing maintenance on the apartment units.  On January 26, 2012 and December 20, 2011, the smoke detector or alarm installed in Ms. Beavers apartment was checked and determined to be in working order.

Sometime after 2:00 a.m. on March 22, 2012, a fire ignited on the stove in Ms. Beavers' apartment while she was apparently preparing to cook French fries in a pan of cooking oil.  It is undisputed that Ms. Beavers recognized and attempted to extinguish the fire, sustaining burns on her hands, arms, forehead, and neck in the process.  It appears from post-fire evidence that Ms. Beavers attempted to extinguish the fire with water.  The burns to her hands, arms, forehead and neck are consistent with burns received when an individual attempts to extinguish a cooking oil fire with water, resulting in splashing scalding cooking oil onto themselves.

Ms. Beavers retreated from the kitchen into the hallway, leaving skin tissue and fingerprint smudges along the corridor walls.  Ms. Beavers knocked the smoke alarm, which was sounding, from its ceiling bracket mount onto the floor.  Tragically, the untenable conditions due to lack of oxygen and toxic gases within the apartment resulted in the deaths of Ms. Beavers and her four children.

Plaintiffs' entire claim against the Housing Authority Defendants is contingent on the allegation that the smoke alarm located in the hallway of the apartment did not sound. However, on December 7, 2015, the smoke alarm from the Beavers' apartment was inspected in the presence of counsel for all parties and their expert witnesses. Daniel T. Gottuk, who has a Ph.D. in mechanical engineering and is an expert in fire detection and fire dynamics, was present for the Housing Authority Defendants. In his expert opinion, based on accepted methodology, the smoke alarm in Ms. Beavers' apartment sounded at the time of the fire after which it was displaced from the ceiling and fell to the floor.

The smoke alarm has no relevance in this case since the undisputed physical evidence establishes that Ms. Marilyn Beavers was awake and aware of the fire. Moreover, even if the smoke alarm were relevant, Plaintiffs offer no scientific evidence to support their claim that the smoke alarm failed to sound. To the contrary, the expert testimony by fire protection engineer Dr. Gottuk establishes that the smoke alarm in Ms. Beavers' unit sounded on the night of the fire.

### ARGUMENT AND AUTHORITY

The Housing Authority Defendants asks that the Court determine as a matter of law that: (a) Jacksonville Housing Authority is immune from tort liability; (b) Phil Nix is immune from tort liability; (c) the duty owed by the remaining Housing Authority Defendants to the Plaintiffs is defined exclusively by the terms of the lease; and (d) the Housing Authority Defendants did not breach any duty owed to the Plaintiffs.

A.     **Jacksonville Housing Authority is immune from tort liability.**

Separate Defendant Jacksonville Housing Authority is a political subdivision and, as such, is immune from tort liability pursuant to Ark. Code Ann. § 21-9-301.

By bringing a direct action against Jacksonville Housing Authority's insurers, Plaintiffs have acknowledged this immunity because under Ark. Code Ann. § 23-79-210, a direct action against a liability insurer is only permitted when the insured is not subject to tort suit. Therefore, the Court should find as a matter of law that Jacksonville Housing Authority is immune from Plaintiffs' claims against it.

B.     **Phil Nix is immune from tort liability.**

The claims against Separate Defendant Phil Nix are based solely on negligence allegedly committed by him during the course and scope of his duties as Executive Director of the Jacksonville Housing Authority. Just as the Jacksonville Housing Authority is entitled to tort immunity as a political subdivision, Phil Nix is also entitled to immunity from suit. The Arkansas Supreme Court has "held that the immunity granted to the political subdivisions named in Ark. Code Ann. § 21-9-301 extends to the officials and <u>employees</u> of such governmental entities." *Doe v. Baum*, 348 Ark. 259, 274, 72 S.W.3d 476 (2002) (emphasis added) (citing *Cousins v. Dennis*, 298 Ark. 310, 767 S.W.2d 296 (1989) (holding that school district employees were immune from tort liability under Ark. Code Ann. § 21-9-301 for alleged acts of negligence they committed while performing their official duties for the school district).

**C.    Any duty owed by the Housing Authority Defendants to Marilyn Beavers and her children is defined exclusively by the terms of the lease.**

As a general rule, "a landlord, under Arkansas law, is not the insurer of the safety of tenants or others upon the premises." *Bartley v. Sweetser*, 319 Ark. 117, 118 (1994). A landlord has "no legal obligation . . . for a tenant's injury on the premises unless a duty is imposed by statute or agreement." *Id*.

In 2005, the Arkansas General Assembly codified this common law rule by enacting Ark. Code Ann. § 18-16-110, which provides:

> No landlord or agent or employee of a landlord shall be liable to a tenant or a tenant's licensee or invitee for death, personal injury, or property damage proximately caused by any defect or disrepair on the premises absent the landlord's:
>
> (1)    Agreement supported by consideration or assumption by conduct of a duty to undertake an obligation to maintain or repair the leased premises; and
>
> (2)    Failure to perform the agreement or assumed duty in a reasonable manner.

These statutory requirements are incorporated into AMI 1105, which provides that Plaintiffs must prove the following in order to prevail on their claim against the Housing Authority Defendants: (1) that they sustained damages; (2) that the Housing Authority Defendants agreed to maintain or repair the leased property and received consideration for that agreement, or that by their conduct they agreed to maintain or repair the leased property; (3) that the Housing Authority Defendants failed to perform the agreement or assumed duty in a reasonable manner; and (4) that the Housing Authority Defendants' failure to perform the agreement or assumed duty in a

reasonable manner was the proximate cause of Plaintiffs' damages.  AMI 1105 (2016).

The existence and scope of any duty owed by the Housing Authority Defendants to Plaintiffs' decedents is an issue for this Court to decide.  *See*, *e.g. Young v. Gastro-Intestinal Ctr., Inc.*, 361 Ark. 209, 218 (2005) ("Defining the existence of a legal duty is emphatically a matter for the courts or the legislature to decide.").  Arkansas law is clear that the Housing Authority Defendants' duty, if any, must arise from a written agreement between the parties or an intentionally assumed duty to repair or maintain.

A written lease agreement existed between Marilyn Beavers and the Jacksonville Housing Authority at the time of the fire.   (A copy of the lease agreement is found at ECF No. 56-1, pgs. 3-15).  In the lease agreement, the Housing Authority Defendants agreed to comply with the housing code and HUD regulations materially affecting health and safety.  (Lease Agreement, at VI, A, 2).  HUD regulations required that at least one working smoke detector be installed in the unit leased to  Marilyn Beavers. See 24 CFR § 5.703(d)(4).  The Housing Authority Defendants complied with this requirement.

There was simply no further duty owed by the Housing Authority Defendants regarding the smoke alarm.  Under the lease, it was the duty of Marilyn Beavers to ensure the installed smoke detector or alarm continued to function.  Ms. Beavers agreed in the lease agreement to "provide reasonable care (including changing batteries) and perform interim testing of smoke detectors to [ensure] they are in working order." (Lease Agreement, Exhibit 1-A, at VII, G).  Thus, even if the smoke detector or alarm

had not sounded,[1] it would not have been a violation of any duty owed by the Housing Authority Defendants.

Once the smoke alarm was installed, the Housing Authority Defendants' duty to Plaintiffs' decedents was fulfilled. No further duty was owed to Plaintiffs' decedents in order to protect them from harm due to smoke inhalation. To hold otherwise would be to ignore the requirements of the lease agreement in this case and would effectively make the Housing Authority Defendants insurers for the safety of their residents, which Arkansas law prohibits. *See Bartley*, *supra*.

D. **The Housing Authority Defendants did not breach any duty owed to Plaintiffs' decedents.**

Plaintiffs' sole claim of negligence against the Housing Authority Defendants is that they "failed to ensure properly working and accessible smoke alarms/detectors were properly installed" in the Beavers' apartment unit because the "smoke detector/alarm located in the hallway of the apartment did not sound" on the night of the fire. (Am. Compl. at ¶¶ 38, 98). However, the undisputed evidence shows that the smoke alarm did sound on the night of the fire. As described by Daniel Gottuk, an expert witness for the Housing Authority Defendants, it is clear from his post-fire inspection of the smoke alarm that its horn sounded at the time of the fire. (ECF No. 56-2, at ¶¶ 7-14). Dr. Gottuk examined the soot deposition around the smoke alarm horn, from which he determined that the alarm sounded. (*Id*. at ¶¶ 8-10, 13). Anecdotally, Dr. Gottuk's conclusion is consistent with the physical evidence which suggests that the

---

[1] There is no scientific evidence that the smoke alarm failed to sound.

smoke alarm was displaced from the ceiling and fell to the floor at some point early in the fire. (*Id.* at ¶¶ 11, 13). This suggests not only that the smoke alarm sounded but also that it was audible to Ms. Beavers who knocked it down.

As a matter of law, the Housing Authority Defendants fulfilled any duty they owed to Ms. Beavers and her children when they installed a working smoke alarm in the leased apartment. At that point, it became Ms. Beavers' duty to ensure that the smoke alarm continued to work. Even assuming, however, that the Housing Authority Defendants owed some additional duty in connection with the smoke alarm, the evidence supports only one reasonable conclusion -- the smoke alarm sounded on the night of the fire. Therefore, no evidence exists from which a reasonable jury could conclude that the Housing Authority Defendants breached any duty that was owed to Plaintiffs or their decedents.

To allow a jury to consider claims against the Housing Authority Defendants would be to run afoul of the maxim that the fact that an accident occurred is not, of itself, evidence of negligence or fault on the part of anyone. See AMI (Civil) 603 (2016). Plaintiffs have no evidence that any negligent act or omission committed by the Housing Authority Defendants proximately caused the deaths of Marilyn Beavers and her children.

## Conclusion

The Housing Authority Defendants asks that the Court determine as a matter of law that: (a) Jacksonville Housing Authority is immune from tort liability; (b) Phil Nix is immune from tort liability; (c) the duty owed by the remaining Housing Authority

Defendants to Plaintiffs is defined exclusively by the terms of the lease; and (d) the Housing Authority Defendants did not breach any duty owed to the Plaintiffs.

        Respectfully submitted,

        William M. Griffin III (#82069)
        Kimberly D. Young (#2003124)
        FRIDAY, ELDREDGE & CLARK, LLP
        400 West Capitol Ave., Suite 2000
        Little Rock, AR 72201
        Phone: (501) 370-1429
        Fax: (501) 244-5329
        griffin@fridayfirm.com
        kyoung@fridayfirm.com

        */s/ William M. Griffin III*
        William M. Griffin III

        *Attorneys for Defendants Arkansas Housing Authorities Property & Casualty Self-Insured Fund, Inc., Jacksonville Housing Authority, and Phil Nix*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a copy of the foregoing has been filed using the CM/ECF filing system on this 12th day of September, 2016, on the following counsel of record:

| | |
|---|---|
| David Hodges<br>david@hodgeslaw.com | Baxter Drennon<br>bdrennon@wlj.com |
| Dion Wilson<br>edionwilson@gmail.com | Sheila F. Campbell<br>campbl@sbcglobal.net |
| John W. Walker<br>johnwalkeratty@aol.com | John L. Wilkerson<br>jwilkerson@arml.org |
| Shawn G. Childs<br>schilds@gabrielmail.com | Teresa Wineland<br>teresa.wineland@kutakrock.com |
| Kathryn Pryor<br>kpryor@wlj.com | James H. Heller<br>jimheller@cozen.com |

A true and correct copy of the foregoing pleading has been served upon the following counsel of record via U.S. Mail on this same date:

William M. Hatchett
Hatchett, DeWalt & Hatchett, PLLC
485 Orchard Lake Road
Pontiac, MI  48341
w.hatchett@hatchettlawfirm.com

*/s/ William M. Griffin III*
William M. Griffin III