# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**FURLANDARE SINGLETON,** *et al.*　　　　　　　　　　　　　　　　**PLAINTIFFS**

v.　　　　　　　　　　　Case No. 4:15-cv-205-KGB

**ARKANSAS HOUSING
AUTHORITIES PROPERTY
& CASUALTY SELF-INSURED
FUND, INC.,** *et al.*　　　　　　　　　　　　　　　　　　　　　　**DEFENDANTS**

## OPINION AND ORDER

Before the Court is a motion for summary judgment filed by separate defendants Wayne Taylor, Larry Hamsher, Chris McDonald, Tony Southerland, Dewan Lewis, the City of Jacksonville, Arkansas, and the Jacksonville Fire Department (collectively, "City defendants") (Dkt. No. 135). Plaintiff Marilyn Beavers and separate plaintiffs Furlandare Singleton and Clyde Hatchet filed responses to the City defendants' motion for summary judgement (Dkt. Nos. 141; 147). The City defendants replied to plaintiffs' responses (Dkt. Nos. 149; 150). In the early morning hours of March 22, 2012, Ms. Beavers and her children, Haylee Singleton, Dequan Singleton, Emily Beavers, and Syndi Singleton, died after a fire in the kitchen of their apartment in Jacksonville. These events are unimaginably tragic. This Court has studied carefully and thoroughly the filings and record evidence in this case. For the following reasons, the Court grants the City defendants' motion for summary judgment and dismisses with prejudice all of plaintiffs' claims against the City defendants (Dkt. No. 135).

### I.　　Hearing

As a preliminary matter, the Court notes that Ms. Beavers' requested a hearing on the City defendants' motion for summary judgment (Dkt. No. 141, ¶ 4). Through informal

communications, Ms. Beavers withdrew her request for a hearing. Therefore, the Court denies as moot Ms. Beavers' request for a hearing.

**II.     Legal Standard**

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

Parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).

The nonmoving party "must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial" and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

### III. Background

Unless otherwise noted, the following facts are taken from Ms. Beavers' response to the City defendants' statement of facts (Dkt. No. 143). On March 22, 2012, Ms. Beavers, Haylee Singleton, Dequan Singleton, Emily Beavers, and Syndi Singleton died of soot and smoke inhalation resulting from an accidental house fire in Ms. Beavers' apartment. Plaintiffs claim that "at or around 2:00 a.m., [Ms.] Beavers . . . shared a telephone conversation with her fiance, Furlandare Singleton, and the children, Decedents Dequan Singleton, Syndi Singleton Haylee Singleton, and Emily Beavers" (Dkt. No. 27, ¶ 34). Plaintiffs allege that the fire ignited in Ms. Beavers' kitchen and that the fire ignited "moments after" this conversation (*Id.*, ¶ 35).

At 5:46 a.m. on March 22, 2012, Jennifer Gray, Ms. Beavers' neighbor, called 911 to report that she smelled smoke towards the back of her apartment (Dkt. No. 143, at 2). Ms. Gray told the dispatcher that the smell of smoke was strong towards the back of the apartment, and indicated that it could be coming from her neighbor's apartment (*Id.*). Ms. Gray's apartment shared a common wall with Ms. Beavers' apartment, which was a mirror image of Ms. Gray's apartment (*Id.*, at 9).

When Ms. Gray called 911, the Jacksonville Fire Department was fighting a fire approximately a half mile from Ms. Gray's apartment (*Id.*, at 3). The dispatcher informed Ms. Gray that the smell of smoke could be coming from that fire, but Ms. Gray insisted "that she smelled smoke inside her home and she only smelled it in her daughter's room and her bathroom" (*Id.*, at 4). The dispatcher told Ms. Gray to remove her daughter from the apartment and to determine whether she could smell smoke outside. (*Id.*). After Ms. Gray reported that she did not smell smoke outside the apartment, the dispatcher told her that she would send a fire engine to her apartment as soon as possible (*Id.*).

The Jacksonville Fire Department was dispatched to Ms. Gray's home at 5:50 a.m (*Id*.). At 6:00 a.m., Officer Southerland and Officer McDonald, who had been attending to the fire a half mile away from Ms. Gray's home, arrived at Ms. Gray's apartment in an ambulance (*Id*.). Captain Hamsher and Lieutenant Taylor arrived in a fire engine two minutes after Officer Southerland and Officer McDonald (*Id*.). Officer Southerland, Officer McDonald, Captain Hamsher, and Lieutenant Taylor investigated Ms. Gray's apartment and did not find signs of a fire (*Id*., at 7-11). They knocked on the front door of Ms. Beavers' apartment, but no one answered the door and they did not detect any movement inside the apartment (*Id*., at 12). The firefighters conducted a thermal image scan of the interior of Ms. Gray's apartment, the attic, and the perimeter of Ms. Gray and Ms. Beavers' building (*Id*., at 16). The firefighters concluded that there was not a fire in the building and left the scene 23 minutes after arriving (*Id*., at 29).[1]

## IV. Discussion

Plaintiffs allege that Officer Southerland, Officer McDonald, Captain Hamsher, and Lieutenant Taylor did not conduct a sufficient investigation of the suspected fire, which resulted in the deaths of Marilyn Beavers, Haylee Singleton, Dequan Singleton, Emily Beavers, and Syndi Singleton. They contend that the City of Jacksonville, the Jacksonville Fire Department, and Dewan Lewis failed to train properly and supervise the responding firefighters. Plaintiffs bring claims against the City Defendants for alleged constitutional violations pursuant to 28 U.S.C. §

---

[1] Mr. Singleton and Mr. Hatchett do not dispute these facts (Dkt. No. 146, at 4-5). Ms. Beavers does not dispute the basic facts that Officer Southerland, Officer McDonald, Captain Hamsher, and Lieutenant Taylor responded to Ms. Gray's call, investigated the scene for 23 minutes, used a thermal imager, and concluded that there was not a fire (Dkt. No. 143, at 5-29). She disputes certain details as well as any implication that the investigation was sufficient and that the thermal imager was used properly (*Id.*). Assuming without deciding that Ms. Beavers' attempts to dispute these facts are valid, these factual disputes are not outcome determinative.

4

1983 and for tort claims under Arkansas law. The City defendants move for summary judgment on all claims.

   A.   Causation

The City defendants argue that all of plaintiffs' claims fail because, "[r]egardless of the claim, the Plaintiffs must establish a causal connection between the City's actions and the deaths of Ms. Beavers and her children[,]" and that the plaintiffs have no evidence to meet their burden (Dkt. No. 136, at 9). Ms. Beavers does not address this argument in her response to the City defendants' motion for summary judgment. Mr. Singleton and Mr. Hatchett argue that summary judgment is improper because "[r]easonable minds could differ as to the time of the death of Ms. Beavers and her children" (Dkt. No. 148, at 5).

For each of their claims against the City defendants, Mr. Singleton, Mr. Hatchett, and Ms. Beavers have the burden to prove that the City defendants' actions caused harm to Marilyn Beavers, Haylee Singleton, Dequan Singleton, Emily Beavers, and Syndi Singleton. *See Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (quoting *Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir. 1990)); *Stauch v. City of Columbia Heights*, 212 F.3d 425, 429 (8th Cir. 2000) ("In a section 1983 suit against a municipality, we must determine two separate issues: '(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation.'") (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 120 (1992)); *Scott v. Cent. Arkansas Nursing Centers, Inc.*, 278 S.W.3d 587, 595 (Ark. App. 2008) ("In a wrongful-death case, the plaintiff must show that the defendant's negligence was the proximate cause of the decedent's death."). Mr. Singleton, Mr. Hatchett, and Ms. Beavers do not

5

have any evidence supporting their theory that the firefighters' allegedly insufficient investigation of Ms. Gray's apartment and the area around Ms. Beavers' apartment caused any harm.

Plaintiffs claim that the fire ignited at approximately 2:00 a.m. (Dkt. Nos. 27, ¶¶ 34-35; 148; at 3). There is no dispute that Ms. Gray made the initial contact with the Jacksonville Fire Department approximately four hours after the fire started (Dkt. No. 143, at 2). Plaintiffs present no evidence raising the possibility that Marilyn Beavers, Haylee Singleton, Dequan Singleton, Emily Beavers, and Syndi Singleton were alive when Officer Southerland, Officer McDonald, Captain Hamsher, and Lieutenant Taylor conducted their investigation. Conversely, in their response to the City defendants' motion for summary judgment, Mr. Singleton and Mr. Hatchett concede that the Pulaski County Coroner, who pronounced Marilyn Beavers, Haylee Singleton, Dequan Singleton, Emily Beavers, and Syndi Singleton dead on the scene of the accident at 10:08 a.m., "was unable to determine the approximate time of death for each decedent" (Dkt. No. 148, at 4).

Mr. Singleton, Mr. Hatchett, and Ms. Beavers do not have sufficient evidence to establish a causal connection between the City defendants' actions and the harm suffered by Marilyn Beavers, Haylee Singleton, Dequan Singleton, Emily Beavers, and Syndi Singleton.[2] The City defendants are entitled to summary judgment on all claims against them. *See Celotex*, 477 U.S. at 331 ("If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law."); *Lewis v. Thomason*, No. 07-6033, 2009 WL 426543, at *9 (W.D. Ark. Feb. 20, 2009) (granting a

---

[2] Contemporaneously with this Order, the Court is entering two other Orders: one on the motion for summary judgment filed by Arkansas Housing Authorities Property & Casualty Self-Insured Fund Inc., Evanston Insurance Company, and Phil Nix (Dkt. No. 56), and the other on the motion for summary judgment filed by BRK Brands Inc. (Dkt. Nos. 88, 179). The Court incorporates its discussion on proximate cause in those two Orders here.

government official's motion for summary judgment on a wrongful death claim where the "connection between the shooting and [the decedent's] eventual death [was] speculative at best.").

B. **Constitutional Claims**

Even if Mr. Singleton, Mr. Hatchett, and Ms. Beavers had sufficient evidence to establish causation, their constitutional claims against the City defendants would fail. Mr. Singleton, Mr. Hatchett, and Ms. Beavers claim that the City defendants violated Marilyn Beavers, Haylee Singleton, Dequan Singleton, Emily Beavers, and Syndi Singleton's constitutional right to due process (Dkt. Nos. 27, ¶ 154; 142, at 6-13; 148, at 6-9). The Court finds that Marilyn Beavers, Haylee Singleton, Dequan Singleton, Emily Beavers, and Syndi Singleton did not have a constitutional right to adequate fire protection. Therefore, even if their investigation was inadequate, Officer Southerland, Officer McDonald, Captain Hamsher, and Lieutenant Taylor did not violate the Due Process Clause. As there was no underlying constitutional violation, the Court dismisses plaintiffs' § 1983 claims against the City of Jacksonville and Dewan Lewis for failure to train and supervise. *See Carpenter v. Gage*, 686 F.3d 644, 651 (8th Cir. 2012) ("In his final claim, Carpenter contends that Sheriff Ferguson and Benton County are liable under § 1983 for failing to train deputy sheriffs adequately about how to recognize and respond to symptoms of strokes. Without a showing that the deputies violated the Constitution, however, there can be no liability for failure to train. The district court thus correctly dismissed the claim against the sheriff and the county." (internal citation omitted)). The Court further finds that while Marilyn Beavers, Haylee Singleton, Dequan Singleton, Emily Beavers, and Syndi Singleton did have a substantive due process right to life, their rights were not violated here for the reasons set forth in this Order.

### 1. Affirmative Right To Governmental Aid

The Due Process Clause of the Fourteenth Amendment provides that States shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.[3] As a general rule, the Due Process Clause does not confer an "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). There are two exceptions to this general rule: the state is required to protect a person "when the person is in the State's custody, and when the State created the danger to which the individual is subjected." *Montgomery v. City of Ames*, 749 F.3d 689, 694 (8th Cir. 2014) (citing *Fields v. Abbott,* 652 F.3d 886, 890 (8th Cir. 2011)).

Ms. Beavers acknowledges the general rule, but she argues that both exceptions apply to this case (Dkt. No. 142, at 6-13). Citing *DeShaney*, she argues that the "special relationship exception" applies to this case because Arkansas state law and a Jacksonville City code provision provided that the City of Jacksonville "was required to, and did, assume a duty to provide fire protection to citizens like Marilyn Beavers and her children" (*Id.*, at 7). A correct reading of *DeShaney* undermines Ms. Beavers' argument.

In *DeShaney*, the Supreme Court recognized that a "State may, through its courts and legislatures," establish that state officials have an affirmative duty to protect that would otherwise not exist. *DeShaney*, 489 U.S. at 202. However, an affirmative duty to protect under state law

---

[3] Plaintiffs cite the Due Process Clauses of both the Fifth and Fourteenth Amendments in their amended complaint (Dkt. No. 27, ¶ 154). Plaintiffs do not have due process claims under the Fifth Amendment because the City defendants are not federal officials. *See Barnes v. City of Omaha*, 574 F.3d 1003, 1006 n.2 (8th Cir. 2009) ("To the extent that the Plaintiffs rely on the Fifth Amendment, their claims must fail. The Fifth Amendment's Due Process Clause applies only to the federal government or federal actions, and the Plaintiffs have not alleged that the federal government or a federal action deprived them of property.").

does not become a *constitutional* duty under the Due Process Clause. *Id.* Therefore, even if the Arkansas state law and the Jacksonville City code provisions cited by Ms. Beavers imposed an affirmative duty on the City defendants to provide adequate fire protection, an issue this Court need not resolve, these provisions would not establish a duty under the Due Process Clause.

The "special relationship" exception applies only in cases where "the State takes a person into its custody and holds him there against his will." *Id.* at 199–200. The affirmative *constitutional* "duty to protect arises not from the State's . . . expressions of intent to help [a person], but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.*, at 200 (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Marilyn Beavers, Haylee Singleton, Dequan Singleton, Emily Beavers, and Syndi Singleton were not in the City defendants' custody when the fire occurred. Therefore, the special relationship exception does not apply to this case.

Ms. Beavers argues that the state-created danger exception also applies to this case (Dkt. No. 142, at 9-13). Before filing her response to the City defendants' motion for summary judgment, Ms. Beavers moved to amend her complaint "to allege a count for state-created danger against" separate defendants the Arkansas Housing Authorities Property & Casualty Self-Insured Fund, Inc., Evanston Insurance Company, and Phil Nix ("Housing Authority Defendants") (Dkt. No. 142, at 9; Dkt. No. 68). In her response to the City defendants' motion for summary judgment, Ms. Beavers argues that, "[w]hile the proposed amended complaint does not expressly refer to the City Defendants in regards to the proposed count alleging state-created danger, the state-created danger exception should be applicable here, because both the Housing Authority Defendants and the City Defendants are subdivisions of the City of Jacksonville" (Dkt. No. 142, at 9).

Ms. Beaver's state-created danger argument made in response to the City defendants' motion for summary judgment is predicated on the viability of her state-created danger claim

against the Housing Authority defendants (*Id.*, at 11-12). The Court denied Ms. Beavers' motion for leave to amend her complaint, finding that amending her complaint to include a state-created danger claim would be futile (Dkt. No. 155). Therefore, the Court rejects her argument that the City defendants had an affirmative duty to protect under the Due Process clause under the state-created danger exception.

The City defendants did not have a duty under the Due Process Clause to provide adequate fire protection to Marilyn Beavers, Haylee Singleton, Dequan Singleton, Emily Beavers, and Syndi Singleton. Therefore, even if the City defendants' actions caused harm to Marilyn Beavers, Haylee Singleton, Dequan Singleton, Emily Beavers, and Syndi Singleton, the Court would dismiss with prejudice plaintiffs' constitutional claims.

### 2. Substantive Due Process

Plaintiffs contend that the City defendants violated Marilyn Beavers, Haylee Singleton, Dequan Singleton, Emily Beavers, and Syndi Singleton's due process right to life (Dkt. No. 148, at 7). The due process guarantee encompasses a substantive sphere barring certain government actions regardless of the fairness of the procedures used to implement them. *Daniels v. Williams,* 474 U.S. 327, 331 (1986). To establish a substantive due process violation by executive action, plaintiffs must show that the behavior of the City defendants was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Sitzes v. City of W. Memphis Ark.*, 606 F.3d 461, 467 (8th Cir. 2010) (citing *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 847, n. 8 (1998)). In *Lewis*, the Court identified a continuum of culpability in the substantive due process context. *Lewis*, U.S. 833 at 848-50. At one end of the culpability spectrum is mere negligence, which is never sufficient to establish a constitutional violation. *Id.* at 849. At the other end of the spectrum is "conduct intended to injure," which generally will "rise to the conscience-shocking

10

level." *Id.* In between these two extremes is a middle range of culpability known as "deliberate indifference." *Id.* The question of whether conduct falling within this middle range reaches the point of conscience-shocking depends on an "exact analysis of circumstances" in a given case. *Id.* at 850. Substantive due process liability is narrow, applying only to the most egregious conduct, and "the Fourteenth Amendment is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the States . . . .'" *Id.* at 848 (quoting *Paul v. Davis,* 424 U.S. 693, 701 (1976)).

The Court finds that the conduct of the City defendants does not shock the judicial conscience. Officer Southerland and Officer McDonald arrived at 6:00 a.m. in response to Ms. Gray's 5:46 a.m. 911 call (Dkt. No. 143, at 5). Captain Hamsher and Lieutenant Taylor arrived two minutes later (*Id.*). Officer McDonald performed a walk-through of Ms. Gray's apartment, followed by Officer Southerland, who felt the walls for signs of heat (*Id.*, at 7-8). Officer Southerland then knocked on the door of Marilyn Beaver's apartment, announced the fire department's presence, and attempted to look through the windows of the apartment but received no response (*Id.*, at 11-14). Officer McDonald, following Captain Hamsher's instruction, conducted a thermal image scan of the interior of Ms. Gray's apartment (*Id.*, at 16). Lieutenant Taylor, following Captain Hamsher's instruction, performed a scan of the attic space shared by the two apartments (*Id.*, at 20). Captain Hamsher ordered a perimeter check of the apartments and ordered the officers to again attempt to contact inhabitants of Ms. Beaver's apartment (Dkt. No. 143, at 25-26). He then ordered the officers back to Ms. Gray's apartment to perform a secondary inspection before leaving the scene (*Id.*, at 28). The Court acknowledges Ms. Gray's affidavit which disputes whether the officers walked around the entire building or only went to the front of Marilyn Beavers' residence (Dkt. No. 141-1, ¶ 9). Based upon the record evidence, even

construing all reasonable inferences in favor of plaintiffs, no reasonable juror could conclude that the City defendants' behavior demonstrates deliberate indifference to the lives of decedents. The City defendants' behavior, as set out in the record evidence, does not shock the judicial conscience. Even if the Court were to determine that the conduct of City defendants in performing their investigation was negligent, such a finding could not give rise to a constitutional claim. Thus, the Court determines there is no violation of substantive due process right to life.

### 3. Municipality's Failure To Train

Mr. Singleton, Mr. Hatchett, and Ms. Beavers allege that City defendants failed to train their firemen to check properly for evidence of a fire through their senses and thermal imaging equipment (Dkt. No. 148, at 6). Plaintiffs sue Officer Southerland, Officer McDonald, Officer Lewis, Captain Hamsher, and Lieutenant Taylor in their individual as well as official capacities. A claim against a state or municipal official in his or her official capacity is treated as a claim against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). A municipality is only subject to § 1983 liability when the violation of a plaintiff's federally protected right can be attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. *Connick v. Thompson,* 563 U.S. 51, 61 (2011). A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on such an alleged failure to train. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] policy [of inadequate training] is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."). To satisfy the statute, a municipality's failure to train

its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388 (1989). Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389.

To establish a failure-to-train claim, a plaintiff must prove that: (1) the municipality's training practices were inadequate; (2) the municipality was deliberately indifferent to the rights of others in adopting the procedures, such that the municipality's failure to train reflects its deliberate or conscious choice; and (3) the alleged deficiency in training practices actually caused the plaintiff's injury. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (internal quotation omitted)). In other words, a plaintiff must show that the municipality had notice. *Id.* at 998 ("[Parrish] must demonstrate that the [county] 'had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.'"); *see also Andrews,* 98 F.3d at 1076 (quoting *Thelma D. v. Bd. of Educ.,* 934 F.2d 929, 934 (8th Cir. 1991)). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [local government] . . . ." *City of Canton,* 489 U.S. at 390-91. Negligent or even grossly negligent training does not by itself give rise to a § 1983 municipal liability claim. *Id.* at 391-92. A plaintiff must point to a particular deficiency in the training program and prove that the identified deficiency was the actual cause of the plaintiff's constitutional injury. *Id.* at 390-91.

To prove deliberate indifference, Mr. Singleton, Mr. Hatchett, and Ms. Beavers need to show that defendants were on notice that, absent additional specified training, it was "highly predictable" that Jacksonville firefighters would be confronted by situations the training was intended to address and would make incorrect decisions. *Connick*, 563 U.S. at 71. In fact,

plaintiffs likely need to show that it was so predictable that failing to train Jacksonville firefighters amounted to conscious disregard for Mrs. Beavers and her children's rights.[4] *Id.*

Mr. Singleton, Mr. Hatchett, and Ms. Beavers allege that defendants had the opportunity to provide notice of and train in accordance with Arkansas Code Annotated § 14-53-101 but failed to do so (Dkt. No. 27, ¶ 161). That section provides that "[t]he city council shall establish fire departments and provide them with proper engines and such other equipment as shall be necessary to extinguish fires and preserve the property of the city and of the inhabitants from conflagration." Ark. Code Ann. § 14-53-101(a)(1). However, the fact that a municipality chooses to provide fire protection does not lend itself to the conclusion that it is bound to provide a certain degree of competence in its services or else violate the constitution. *Shortino v. Wheeler,* 531 F.2d 938, 939 (8th Cir. 1976).

Mr. Singleton, Mr. Hatchett, and Ms. Beavers point to no deficiency in the training program, nor do they offer evidence that the City defendants were on notice that its procedures were inadequate and likely to result in a violation of constitutional rights. To the extent Mr. Singleton, Mr. Hatchett, and Ms. Beavers construe the instruction given by Captain Larry Hamsher and Officer Lewis as policy and procedure, they point to no deficiency with the policy or procedure

---

[4] Although *Canton* leaves open the possibility of single-incident liability, a pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. *Bd. Of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997). This is so because "[p]olicymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability.'" *Connick*, 563 U.S. at 62 (quoting *Bryan Cty.*, 520 U.S. at 407). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

itself; rather, they point the Court to the execution of the policy or procedure by the firemen as deficient (Dkt. No. 143, at 7-28). Mr. Singleton, Mr. Hatchett, and Ms. Beavers' failure to train claim appears to rest on their assertion that City defendants were "playing pranks on each other and 'not taking this seriously.'" (*Id*.) As such, the Court finds no merit to Mr. Singleton, Mr. Hatchett, and Ms. Beavers' failure to train claim and grants summary judgment in favor of City defendants.

4. **City Defendants' Individual Capacity**

Liability may be imposed against defendants in personal capacity suits even if the violation of a plaintiff's federally protected right was not attributable to the enforcement of a governmental policy or practice. To establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Here, City defendants in their personal capacity are entitled to qualified immunity. Qualified immunity shields federal and state officials from suit unless a plaintiff pleads facts showing: (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Foster v. Mo. Dep't of Health & Senior Servs.*, 736 F.3d 759, 762 (8th Cir. 2013) (quoting *Winslow v. Smith*, 696 F.3d 716, 731 (8th Cir. 2012)). "If the answer to either question is no" then a defendant is entitled to qualified immunity. *Doe v. Flaherty*, 623 F.3d 577, 583 (8th Cir. 2010). The Court may take up these questions in either order. *White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017); *Foster*, 736 F.3d at 763.

"For a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citing

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). The law is clear if it gives the official "fair warning" that his conduct violated an individual's rights when the officer acted. *Hope v. Pelzer,* 536 U.S. 730, 741 (2002). To the extent that Mr. Singleton, Mr. Hatchett, and Ms. Beavers allege a constitutional right to governmental aid and competent fire services, that claim fails. No constitutional duty exists for an entity to provide a certain degree of competence in its services or else violate the constitution. *Jackson v. Byrne*, 738 F.2d 1443, 1446 (7th Cir. 1984), *cited with approval in Wells v. Walker,* 671 F. Supp. 624, 627 (E.D. Ark. 1987), *aff'd*, 852 F.2d 368 (8th Cir. 1988). "The Constitution imposes no obligation on the State to provide perfect or even competent rescue services." *Dodd v. Jones*, 623 F.3d 563, 568 (8th Cir. 2010) (citing *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 478 (3d Cir. 2003)); *see also Doe v. Hennepin County*, 858 F.2d 1325, 1329 (8th Cir 1988) (rejecting the idea that an official may be charged with failing to exercise an affirmative duty in the absence of a special relationship).

Plaintiffs further allege a failure to train and supervise as to Captain Larry Hamsher and Training Officer Dewan Lewis (Dkt. No. 27, ¶¶ 162-63). Supervisory liability is a form of personal liability. *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987). As such, supervisory liability does not depend on a municipal policy or practice. A supervisor may be liable under § 1983 if: (1) she had notice of subordinates' unconstitutional actions; (2) she demonstrated deliberate indifference to or tacit authorization of the offensive acts; and (3) her failure to act proximately caused the injury. *Andrews,* 98 F.3d at 1078.

Mr. Singleton, Mr. Hatchett, and Ms. Beavers offer no record evidence that Captain Larry Hamsher and Training Officer Dewan Lewis were on notice of unconstitutional activity of their subordinates. No reasonable juror could conclude from the record evidence before the Court that

Captain Larry Hamsher and Training Officer Dewan Lewis were on such notice. As a result, City defendants are entitled to qualified immunity as a matter of law.

### C. State Claims

The City defendants argue that, even if Mr. Singleton, Mr. Hatchett, and Ms. Beavers had sufficient evidence to establish causation, they are entitled to statutory immunity as to any state law claims (Dkt. No. 136, at 18). Mr. Singleton, Mr. Hatchett, and Ms. Beavers do not respond to this argument.[5]

Under Arkansas law, state officers "are immune from liability and from suit . . . for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment." Ark. Code Ann. § 19-10-305(a).[6] Plaintiffs do not even allege, let alone offer record evidence tending to show, that the City defendants acted maliciously. *See*

---

[5] Mr. Singleton and Mr. Hatchett acknowledge this argument in their response to the City defendants' motion for summary judgment, but they do not respond to the substance of the argument (Dkt. No. 148, at 9-10).

[6] Ms. Beavers argued that the City defendants were liable because their actions fell within the "state-created danger" exception to the general rule that the Due Process Clause generally confers no right to governmental aid (Dkt. No. 142, at 9-13). Pursuant to Arkansas Code Annotated § 21-9-301, Jacksonville Fire Department and the City of Jacksonville, to the extent each is a municipal entity, are immune from suit for negligence:

> It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state shall be immune from liability for damages. No tort action shall lie against any such political subdivision because of the acts of their agents and employees.

The Arkansas Supreme Court has consistently held that § 21-9-301 provides city employees with immunity from civil liability for negligent acts but not for intentional acts. *See City of Fayetteville v. Romine*, 284 S.W.3d 10, 13 (Ark. 2008); *Smith v. Brt,* 211 S.W.3d 485, 489 (Ark. 2005); *Deitsch v. Tillery,* 833 S.W.2d 760, 762 (Ark. 1992). Here, plaintiffs sue defendants under state law "as employees and agents of the Defendant Jacksonville Fire Department" or are silent as to capacity (Dkt. No. 27, ¶¶ 74, 87, 93).

*Fuqua v. Flowers*, 20 S.W.3d 388, 391 (Ark. 2000) ("[M]alice is not necessarily personal hate. It is rather an intent and disposition to do a wrongful act greatly injurious to another. Malice is also defined as the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent . . . . A conscious violation of the law . . . which operates to the prejudice of another person. A condition of the mind showing a heart . . . fatally bent on mischief.") (internal citations omitted). The Court finds that the City defendants are immune from Mr. Singleton, Mr. Hatchett, and Ms. Beavers' state law claims.

### V. Conclusion

The Court grants the City defendants' motion for summary judgment (Dkt. No. 135). The Court dismisses with prejudice all claims against the City defendants.

So ordered this the 31st day of March, 2018.

_____
Kristine G. Baker
United States District Judge